**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Ronald Lee PAUL,
Defendant-Appellant.**

**No. 86–1459.**

United States Court of Appeals,
Seventh Circuit.

Argued Nov. 12, 1986.

Decided Dec. 29, 1986.

Arthur M. Lerner, Greaves, Lerner & Kirchnew, Champaign, Ill., for defendant-appellant.

Paul L. Kanter, Asst. U.S. Atty., Danville, Ill., for plaintiff-appellee.

Before POSNER and COFFEY, Circuit Judges, and PELL, Senior Circuit Judge.

POSNER, Circuit Judge.

Ronald Lee Paul appeals from his conviction for possession of marijuana, for which he was sentenced to 18 months in prison to be followed by 5 years on probation. The only issue is the lawfulness of a search of Paul's home, which yielded marijuana that was used as evidence in his trial.

Michael Moore, a confidential informant for the federal drug authorities, arranged to buy a bale of marijuana from Paul for $44,000. In three phone conversations between Moore and Paul, taped by Illinois officers who were cooperating with the federal agents, Paul indicated that the sale would take place on September 6. In the last call, made at 9:00 a.m. on the sixth, Paul told Moore to bring the money to Paul's home at 11:00 a.m. The agents didn't want to entrust an informant with so much cash, but on the other hand Moore didn't want to go in empty-handed, since he believed (correctly) that there were loaded guns in the house. The agents decided to give Moore an electronic transmitting device, the button of which he was to press when he saw marijuana, to summon the agents, who would be waiting outside. Thus equipped, Moore went to Paul's house. Paul led him to the basement,

where Moore saw two bales of marijuana. Moore then pressed the button, agents knocked on the door of the house, and when there was no answer they entered the house (*United States v. Andrus*, 775 F.2d 825 (7th Cir.1985)), went to the basement, saw the bales of marijuana, and arrested Paul.

 Unless there is an emergency ("exigent circumstances"), government agents need a warrant to conduct a search of or make an arrest in a person's home without his consent, even if they have probable cause to believe there is contraband or other incriminating evidence there. *Payton v. New York*, 445 U.S. 573, 587–88, 100 S.Ct. 1371, 1380–81, 63 L.Ed.2d 639 (1980); *United States v. Altman*, 797 F.2d 514, 515 (7th Cir.1986) (per curiam). Moore would have been in danger if, having agreed to bring the $44,000 for the marijuana, and having been shown the marijuana all neatly baled and ready to go, he had told Paul, "Oh, gee, I forgot to bring any money. I'll run home and get some." Without more, such danger would create an emergency justifying the agents in entering Paul's house without a warrant. See *United States v. Dowell*, 724 F.2d 599, 602–03 (7th Cir.1984). But if the danger could readily have been averted by the federal agents' either getting a search warrant and executing it in lieu of sending Moore into the house, or giving him $44,000 in marked money (a conventional method of using confidential informants to incriminate drug dealers), then the danger, having been created by the agents' lack of imagination, would not justify a search without a warrant. See *id.* at 602; *United States v. Berkwitt*, 619 F.2d 649, 654 (7th Cir.1980). The government, very short-sightedly as it seems to us, argues that it could not have gotten a warrant because (1) until Moore pushed the button the agents didn't have probable cause to believe there was marijuana in Paul's house and (2) it couldn't satisfy the requirement of particularity found in the warrant clause of the Fourth Amendment because Paul's house was on a farm that had other buildings and the agents weren't sure where the transaction would take place. These are very shallow arguments. The fact that Paul had been taped the morning of the sixth telling Moore to bring the $44,000 later that morning established not a certainty, but a probability (all that is necessary to satisfy the requirement of probable cause), that Paul had the marijuana either in the house or elsewhere on the farm. And the requirement of particularity would have been satisfied by specifying the house and other buildings, vehicles, and yard areas at Paul's farm. Cf. *Steele v. United States*, 267 U.S. 498, 503, 45 S.Ct. 414, 416, 69 L.Ed. 757 (1925); *United States v. Gusan*, 549 F.2d 15, 19 (7th Cir.1977).

What is true is that there was some chance that the marijuana wouldn't be there. Illegal drug deals frequently fall through at the last minute. Moreover, dealers are sometimes wary, and it is not beyond the bounds of probability that when Moore showed up Paul would drive him somewhere else to complete the deal. These possibilities were not enough to defeat a showing of probable cause but they did create a danger that a search would be futile—and worse; for it would tip the agents' hand, blow Moore's cover, and lead Paul to change his base of operations.

 All this assumes, however, that the agents, having obtained a search warrant, would have been obliged to execute it regardless, which of course is false. They could have gotten the warrant and then not executed it until and unless Moore pressed the button, which would show there was marijuana on the premises—for Moore wouldn't be asked for the $44,000 if there were no marijuana. In light of this simple alternative to conducting a search without a warrant, we need not consider the feasibility of the agents' giving Moore the $44,000 in cash that he would need to complete the deal and keeping a close watch on him to make sure he didn't abscond with the money (or the marijuana).

 Although we do not think the search was within the emergency exception to *Payton,* there is an alternative ground

on which its lawfulness must be sustained: consent. *Schneckloth v. Bustamonte*, 412 U.S. 218, 219, 93 S.Ct. 2041, 2043–44, 36 L.Ed.2d 854 (1973). Paul invited Moore into his house and down to the basement, where the marijuana was in plain view. If Moore had been a police undercover agent rather than a confidential informant, he could have arrested Paul then and there, and being lawfully in the basement could have seized the drugs because they were in plain view. *Coolidge v. New Hampshire*, 403 U.S. 443, 464–73, 91 S.Ct. 2022, 2037–42, 29 L.Ed.2d 564 (1971); *United States v. Cerri*, 753 F.2d 61, 64 (7th Cir.1985). Moore in fact could have made a citizen's arrest. See Ill.Rev.Stat. ch. 38, § 107–3. We held in *United States v. Janik*, 723 F.2d 537, 548 (7th Cir.1983), that when one invites an undercover agent into his house, the agent can summon other agents to assist in the arrest, and the other agents are not guilty of a violation of the Fourth Amendment. We think the principle extends to the case where the initial, consensual entry is by a confidential informant. The interest that the *Payton* decision protects is the interest in the privacy of the home, and has been fatally compromised when the owner admits a confidential informant and proudly displays contraband to him. It makes no difference that the owner does not know he is dealing with an informant. "A government agent may obtain an invitation onto property by misrepresenting his identity, and if invited, does not need probable cause nor warrant to enter so long as he does not exceed the scope of his invitation." *United States v. Scherer*, 673 F.2d 176, 182 (7th Cir.1982). See *Lewis v. United States*, 385 U.S. 206, 212, 87 S.Ct. 424, 428, 17 L.Ed.2d 312 (1966). Hence Moore could have testified to what he saw in the basement. Having seen it he could as we said have arrested Paul on the spot. He could have grabbed some marijuana and run out and handed it to the agents. He could have been an undercover agent and summoned 100 other agents to enter forcibly the second after Paul showed him the marijuana. Had Moore done (or been) any of these things,

Paul would have had no recourse under the Fourth Amendment. With all these risks assumed, the incremental risk that Moore would be an informant rather than an agent but would invite agents in to protect him and arrest Paul is too slight to bring the requirement of obtaining a warrant into play.

There was no violation of the Fourth Amendment and the judgment is therefore AFFIRMED.