**UNITED STATES of America, Plaintiff,**

**v.**

**Brian Craig SAMET, Robert Montgomery Adamson, and Arne Peter Christensen, Defendants.**

**Crim. No. 91–185–N.**

United States District Court, E.D. Virginia, Norfolk Division.

June 4, 1992.

Nunc Pro Tunc Feb. 19, 1992.

Arenda L. Wright Allen, Asst. U.S. Atty., Norfolk, Va., for plaintiff.

James O. Broccoletti, Norfolk, Va., for defendant Samet.

Stanley Sacks, Norfolk, Va., for defendant Adamson.

Franklin Swartz, Norfolk, Va., for defendant Christensen.

## OPINION

REBECCA BEACH SMITH, District Judge.

Defendants, students at Old Dominion University ("ODU"), sold cocaine to an undercover agent in defendant Samet's apartment on December 4, 1991. Upon a signal from the undercover agent, members of the Portsmouth City Police Department and Drug Enforcement Agency ("DEA") Task Force entered Samet's apartment to arrest Samet, Adamson, and Christensen, at which time the officers seized evidence and obtained inculpatory statements from defendants. The officers never obtained or attempted to obtain a search or arrest warrant. This matter came before the court on a motion by defendants Samet and Adamson to suppress from use at trial and sentencing[1] any evidence seized or statements obtained as a result of the warrantless entry into Samet's apartment. For the reasons stated from the bench after a hearing conducted on February 19, 1992, and as written herein, the court DENIED defendants' motion to suppress.[2]

### I. Facts

Testimony at the suppression hearing revealed the following facts. Between November 27, 1991, and December 3, 1991, Detective Shelton of the Portsmouth Police Department, working in an undercover capacity in conjunction with the Norfolk DEA Task Force, negotiated a controlled buy of 277 grams of cocaine[3] from Samet in exchange for $12,500.[4] Initially, Shelton and Samet scheduled the transaction for December 4, 1991, in Portsmouth, Virginia, where the DEA could control the location and conditions of the buy. However, at about 11:30 p.m. on December 3, 1991, Samet telephoned Shelton to arrange a new location because Samet's supplier was uncomfortable with the Portsmouth location. The two agreed to consummate the deal at Samet's apartment on December 4, 1991, at 3:30 p.m.

Shelton arrived at the apartment at about 3:37 p.m. on December 4, 1991, wearing a recording and transmitting device. A surveillance team of twelve to fifteen officers waited outside of Samet's apartment. Samet was alone. Shelton gave Samet the $12,500, and Samet counted it. Samet then received a phone call from Christensen, who informed Samet that he would arrive with the cocaine in fifteen minutes. Forty minutes later, Christensen arrived with Adamson.

Once Christensen satisfied himself about the money, he nodded to Adamson, who then left the apartment. Samet and Christensen went into the back bedroom and closed the door, leaving Shelton alone in the living room. Adamson returned to the apartment with a black school bag and joined Samet and Christensen in the back bedroom. Adamson then returned to the living room without the bag. Shortly thereafter, someone called Adamson into the back bedroom. Samet then invited Shelton into the bedroom.

Christensen gave Shelton the cocaine. After some conversation between Shelton and Christensen regarding the purity of

1. Both defendants pled guilty and were sentenced on May 21, 1992.

2. At the conclusion of the hearing, the court reserved the option to file a written opinion at a later date.

3. Although the indictment stated 284 grams of cocaine, the government later informed the court that its laboratory analysis revealed the quantity of cocaine to be 277 grams.

4. Shelton had purchased from Samet a smaller amount of cocaine on November 21, 1991. Shelton had also met with Samet on November 27 and December 2 and had spoken with Samet over the phone on December 3. Adamson and Christensen were present on none of these occasions.

the cocaine and future purchases, Shelton gave the arrest signal, "well I'm good to go," via the wire, and the officers waiting outside broke open the door to Samet's apartment using a battering ram. Approximately six to eight officers entered the apartment. Before entering, the officers did not announce themselves, and after entering, one officer announced, "Police—Got a search warrant." The officers, in fact, did not possess a search warrant.

The officers arrested the three defendants, secured the scene, and advised each defendant of his *Miranda* rights. Defendants individually waived those rights and spoke with a DEA agent, each making a short inculpatory statement. Five minutes later, Samet agreed to the search of his apartment by signing a consent-to-search form. The officers then seized the black school bag, which Adamson had carried, a television cable bill, and a City of Norfolk bill in Samet's name.[5] Defendants were then taken to the DEA office where they made more detailed statements.

## II. Legal Analysis

Defendants Samet and Adamson argued that regardless of the waiver of *Miranda* rights and the signed consent-to-search forms, the warrantless entry of the officers into Samet's apartment violated the Fourth Amendment, and, therefore, the court should apply the exclusionary rule to suppress the subsequently seized evidence. This court concluded that the warrantless entry of the officers, upon a signal from the agent already lawfully inside the apartment, was also lawful. Consequently, evidence that flowed from their warrantless entry was not tainted by any Fourth Amendment violation.

The Fourth Amendment, made applicable to the states by the Fourteenth Amendment, "prohibits the police from making a warrantless and nonconsensual entry into a suspect's home in order to make a routine felony arrest." *Payton v. New York*, 445 U.S. 573, 576, 100 S.Ct. 1371, 1375, 63 L.Ed.2d 639 (1980). In *Payton*, the Court was persuaded by the Second Circuit's position:

'To be arrested in the home involves not only the invasion attendant to all arrests but also an invasion of the sanctity of the home. This is simply too substantial an invasion to allow without a warrant, at least in the absence of exigent circumstances, even when it is accomplished under statutory authority and when probable cause is clearly present.'

*Id.* at 588–89, 100 S.Ct. at 1381–82 (quoting *United States v. Reed*, 572 F.2d 412, 423 (2d Cir.), *cert. denied sub nom. Goldsmith v. United States*, 439 U.S. 913, 99 S.Ct. 283, 58 L.Ed.2d 259 (1978)). Thus, the Court concluded that "the Fourth Amendment has drawn a firm line at the entrance to the house. Absent exigent circumstances, that threshold may not reasonably be crossed without a warrant." *Id.*, 445 U.S. at 590, 100 S.Ct. at 1382; *see id.* at 586 nn. 24–26, 100 S.Ct. at 1380–81 nn. 24–26 ("searches and seizures inside a home without a warrant are presumptively unreasonable" and a judicial officer, not a policeman or government enforcement agent, must decide when the right to privacy yields to the right to search). The rule in *Payton* applies to routine felony arrests. Warrants are not required in cases in which the prosecution can prove by a preponderance of the evidence either that the presence of exigent circumstances justified the warrantless entry, *Lego v. Twomey*, 404 U.S. 477, 488, 489, 92 S.Ct. 619, 626, 627, 30 L.Ed.2d 618 (1971), or that an occupant consented to the entry, *Payton*, 445 U.S. at 583, 100 S.Ct. at 1378.

Samet and Adamson contended that no sufficient exigent circumstances justified a warrantless entry, and that despite notice the day before of the time and place of the

---

**5.** Later that day, the officers searched defendant Christensen's apartment after Christensen signed a consent-to-search form. They seized the following items from Christensen's apartment: a plastic bag containing rice, a telephone bill in the name of Christensen, an ODU magazine, an empty bottle of Inositol, a tobacco roller, a "bong," a pipe, portable scales, and a wooden Ruinite box containing a set of digital scales. Defendants Samet and Adamson sought to suppress this evidence as well, contending that the warrantless entry into Samet's apartment tainted it. Defendant Christensen did not join the motion to suppress in any regard.

transaction, the officers took no steps to obtain any type of anticipatory search warrant. The government, however, did not argue that exigent circumstances justified its warrantless entry. Instead, it argued that Samet's consent to the initial entry of Detective Shelton to purchase the cocaine constituted consent for the entry of the other officers.[6] The Fourth Circuit has not addressed this precise issue. *Cf. United States v. McCraw*, 920 F.2d 224, 228–29 (4th Cir.1990) (warrantless entry violated Fourth Amendment because officers neither obtained defendant's consent nor demonstrated exigent circumstances).

Detective Shelton was lawfully in the apartment, and no one disputed that he had the authority and probable cause to arrest defendants upon the exchange of the cash for the cocaine. The arrest did not become unlawful merely because Shelton, as an undercover agent, first signalled the arrest team to assist him. *United States v. Diaz*, 814 F.2d 454, 459 (7th Cir.), *cert. denied*, 484 U.S. 857, 108 S.Ct. 166, 98 L.Ed.2d 120 (1987); *see United States v. Paul*, 808 F.2d 645, 647–48 (7th Cir.1986) (officers could enter house without warrant upon prearranged signal from informant in case in which seller of illegal drugs invited confidential informant into his home to view marijuana, and informant saw marijuana).

In *Diaz*, the Seventh Circuit squarely addressed the question of a warrantless entry into defendant's hotel room under circumstances in which the police apparently had time to obtain a search warrant, but without explanation did not. The court stated: " '[W]hen one invites an undercover agent into his house, the agent can summon other agents to assist in the arrest, and the other agents are not guilty of a violation of the Fourth Amendment.' " *Diaz*, 814 F.2d at 459 (quoting *United States v. Paul*, 808 F.2d at 648). Although the court found no exigent circumstances justifying the warrantless entry, it concluded that the defendant effectively consented to a second entry by police when he consented to the initial entry of an undercover officer posing as a drug purchaser. The court acknowledged that a search warrant assures the neutral and detached evaluation by a magistrate, but recognized that under these circumstances, it "would not have prevented the intrusion.... [T]he fact that [the undercover agent] was assisted by other law enforcement officers in securing [the] arrest cannot make a constitutional difference." *Id.*

This doctrine of "consent once removed" applies to cases in which "the agent (or informant) entered at the express invitation of someone with authority to consent, at that point established the existence of probable cause to effectuate an arrest or search, and immediately summoned help from other officers." *Id.*[7] The circum-

---

**6.** If entry was lawful, the evidence seized after the warrantless entry, i.e., the school bag, the two statements from Samet, and the two bills, would be admissible because the officers obtained it in a search incident to a lawful arrest and only after obtaining Samet's written consent for the search. Likewise, no arguable taint existed in regard to the seizures from defendant Christensen's apartment. *See supra* note 5.

**7.** The Eighth Circuit recently decided an unlawful entry case in which the doctrine of "consent once removed" might have justified the warrantless entry, but the court did not address the doctrine. In *United States v. Templeman*, 938 F.2d 122 (8th Cir.1991), the court found that a warrantless entry into the defendant's home violated the Fourth Amendment because no exigent circumstances justified the entry. *Id.* at 124. In *Templeman*, officers intercepted a package of cocaine intended for Stowe, who then agreed to cooperate by delivering it to Templeman. Stowe had regularly made such deliveries to

Templeman. Stowe delivered the package to Templeman at Templeman's home, and when the package was opened, the officers rushed the trailer home and identified themselves. When the officers observed Templeman running to the rear of the home, they forced open the door and arrested him. The court found their entry unlawful.

The court based its decision on the absence of exigent circumstances and the fact that the officers had ample opportunity to obtain a search warrant in advance. The court never addressed the question of whether Templeman's consent to the entry of Stowe, who was acting as an informant, could be imputed to the entry of the officers. The facts in *Templeman* then differed from this case in that the police used an informant, rather than an undercover agent, to signal an arrest team. *But see United States v. Paul*, 808 F.2d at 648. This court finds the facts, as well as the reasoning of the courts, in *Diaz* and *Paul* to be more applicable and persuasive, respectively, to the case at bar than *Templeman*.

stances of this case clearly satisfied each of these conditions. Samet, as the resident of the apartment, had authority to consent to Shelton's entry and did invite Shelton into the apartment to make the cocaine purchase. Thus, Samet effectively consented to the entry of the police officers waiting outside. As soon as Shelton established probable cause to make the arrest, he immediately gave the signal to those officers.[8] Once inside, they arrested defendants and obtained Samet's written consent to search the apartment before seizing any evidence.

■ Moreover, the deceptive means by which the undercover agent obtained the consent made no constitutional difference. In *Lewis v. United States*, 385 U.S. 206, 208–09, 87 S.Ct. 424, 425–26, 17 L.Ed.2d 312 (1966), the Supreme Court found no Fourth Amendment violation when an undercover agent obtained the defendant's consent by deception to enter the defendant's home without a warrant to purchase marijuana. The Court first acknowledged the well-established rule that "in the detection of many types of crime, the Government is entitled to use decoys and to conceal the identity of its agents." *Id.* at 209, 87 S.Ct. at 426 (citations omitted). The Court reasoned further:

> [T]he petitioner invited the undercover agent to his home for the specific purpose of executing a felonious sale of narcotics. Petitioner's only concern was whether the agent was a willing purchaser who could pay the agreed price.... Were we to hold the deceptions of the agent in this case constitutionally prohibited, we would come near to a rule that the use of undercover agents in any manner is virtually unconstitutional *per se.* Such a rule would, for example, severely hamper the Government in ferreting out those *organized criminal activities* that are characterized by covert dealings with victims who either cannot or do not protest. A prime example is provided by the narcotics traffic.

The fact that the undercover agent entered petitioner's home does not compel a different conclusion. Without question, the home is accorded the full range of Fourth Amendment protections. But when, as here, the home is converted into a commercial center to which outsiders are invited for purposes of transacting unlawful business, that business is entitled to no greater sanctity than if it were carried on in a store, a garage, a car, or on the street. A government agent, in the same manner as a private person, may accept an invitation to do business and may enter upon the premises for the very purposes contemplated by the occupant.

*Id.* at 210–11, 87 S.Ct. at 427–28 (footnote and citations omitted). Accordingly, the warrantless entry by the officers to assist in the arrest upon a signal from Detective Shelton, to whose presence in the apartment defendants had already consented, did not violate the Fourth Amendment.

For the foregoing reasons, the court DENIED defendants' motion to suppress the evidence and statements obtained as a result of the warrantless entry into Samet's apartment.

---

**8.** Neither the officers' use of a battering ram nor the false statement of one officer that he had a search warrant makes illegal an otherwise legal entry. Neither action affected the Samet's initial consent to the entry into his apartment.