**UNITED STATES of America, Plaintiff–Appellant,**

v.

**Walter JACHIMKO, Defendant–Appellee.**

**No. 93–1605.**

United States Court of Appeals, Seventh Circuit.

Argued Nov. 12, 1993.

Decided Feb. 24, 1994.

Patrick S. Layng, Asst. U.S. Atty., Office of the U.S. Atty., Crim. Div., Chicago, IL (argued), for U.S.

Anthony Pinelli (argued), George Murtaugh, Jr., Lydon & Griffin, Chicago, IL for Walter Jachimko.

Before GIBSON,* KANNE and ROVNER, Circuit Judges.

FLOYD R. GIBSON, Circuit Judge.

The United States appeals the district court's suppression of evidence obtained during a search of Walter Jachimko's home. We reverse and remand for further consideration.

## I. BACKGROUND

In March 1992, Joseph Hendrickson approached the Drug Enforcement Administration (DEA) with information about individuals engaged in indoor marijuana cultivation. He identified Robert Anhalt, Robert's brother William, and five other individuals as being involved in the operation, but did not know of (and therefore did not divulge) Jachimko's involvement.

The DEA began observing the individuals Hendrickson identified. On March 24, Hendrickson arranged a meeting between the Anhalts and a DEA undercover agent, with the meeting taking place at Robert's house. Another meeting took place the next day, at which time undercover agents arranged to purchase some marijuana plants. On June 1,

---

* The Honorable Floyd R. Gibson, Circuit Judge     from the Eighth Circuit, is sitting by designation.

Hendrickson met Robert at Robert's house, purchased two plants, and ordered 150 more. One week later, Hendrickson paid Robert $150 toward this purchase and arranged to see the plants on June 30. Hendrickson wore a recording device to both of these meetings, and DEA agents monitored the conversations.

On June 30, DEA agents met Hendrickson near Robert's house and supplied him with a recording device and an agent alert button. He was instructed to activate the alert button only if he saw more than one hundred marijuana plants. Hendrickson then went to Robert's house, came back, then returned to Robert's house.

At this point, events took a turn toward the unexpected. Hendrickson and Robert left Robert's house in a car; the DEA agents followed them. Hendrickson and Robert drove to and entered Jachimko's house; at the time, the DEA did not have any suspicion that Jachimko was involved in any drug activity, nor did they suspect that there was marijuana inside the house.

Twenty minutes after entering Jachimko's house,[1] the agent alert button was activated, and agents knocked on the side door. Jachimko opened the door, but tried to close it when the agents identified themselves. A scuffle ensued, and Jachimko and Robert were arrested. DEA agents searched the premises and seized marijuana plants.

After being indicted for possessing marijuana with intent to distribute, Jachimko[2] moved to suppress the marijuana plants seized from his house. In addition to the findings outlined above, the court found "that Hendrickson was not only not a credible witness, but that he in all probability perjured himself before the court." *United States v. Anhalt*, 814 F.Supp. 750, 752 (N.D.Ill.1993). The court then held the so-called "consent once removed" doctrine did not validate the warrantless entry into Jachimko's home because Jachimko was not the subject of previous law enforcement investigation, thereby causing Hendrickson to have an expanded role in determining whether probable cause existed. *Id.* at 754. The government has appealed the district court's suppression order.

## II. DISCUSSION

"Unless there is an emergency ('exigent circumstances'), government agents need a warrant to conduct a search of or make an arrest in a person's home without his consent, even if they have probable cause to believe there is contraband or other incriminating evidence there." *United States v. Paul*, 808 F.2d 645, 647 (7th Cir.1986). The officers did not have a warrant, and the government does not now contend the entry into Jachimko's home was justified by exigent circumstances. Instead, the government argues the DEA agents could lawfully enter Jachimko's house because Jachimko consented to Hendrickson's entry. The best way to explain this concept is by use of examples; accordingly, we briefly discuss our only four cases discussing this principle.

The concept originated in *United States v. White*, 660 F.2d 1178 (7th Cir.1981), a case wherein undercover officers participating in a drug transaction summoned other officers into a home in order to help them arrest the defendants. We did not consider the "latter entry as being a separate intrusion in view of the fact that [an undercover agent] remained in the apartment at all times after his initial consensual entry." *Id.* at 1183 n. 3. In *United States v. Janik*, 723 F.2d 537 (7th Cir.1983), Janik had invited his friend— whom he knew to be a police officer—to come into his house and view an unregistered submachine gun he had purchased. While there, the officer contacted federal agents, and the submachine gun was seized. The court explained that the officer was not a trespasser and therefore did not invade Janik's privacy. *Id.* at 547–48. The court further held that "[t]he fact that [the officer] got

---

1. The record does not disclose what happened during these twenty minutes. The district court observed that Hendrickson's recording device was not working, and the DEA agent who monitored the transmitter did not make a report about what he heard.

2. Robert Anhalt pleaded guilty to this charge. The fate of the other individuals Hendrickson identified does not appear in the record.

help from other officers in removing the submachine gun can make no difference.... [I]f [he] was privileged to slip the gun underneath his jacket and leave the apartment we think he was also privileged to have a police escort to prevent interference by Janik." *Id.* at 548.

The doctrine was slightly extended in *United States v. Paul,* 808 F.2d 645 (7th Cir.1986). This case was similar to *White* except, instead of an undercover officer being granted consent to enter, consent was extended to a confidential informant wearing (as in the case at bar) an alert button. After discussing *Janik,* the *Paul* court held that because Paul's privacy interests had already been compromised, and because if the informant had happened to be an agent he would have been entitled to summon more agents after viewing the drugs, "the principle [of *Janik* ] extends to the case where the initial, consensual entry is by a confidential informant." *Id.* at 648. Finally, in *United States v. Diaz,* 814 F.2d 454 (7th Cir.), *cert. denied,* 484 U.S. 857, 108 S.Ct. 166, 98 L.Ed.2d 120 (1987), the court limited the use of this doctrine (of consent once removed) to those instances in which "the agent (or informant) entered at the express invitation of someone with authority to consent, at that point established the existence of probable cause to effectuate an arrest or search, and immediately summoned help from other officers." *Id.* at 459.

█ In the case at bar, the district court committed clear error, *United States v. Spears,* 965 F.2d 262, 269 (7th Cir.1992), by failing to evaluate the facts in light of *Diaz*'s framework. The district court's requirement that there be a pre-existing investigation with respect to Jachimko is unwarranted because prior investigation or probable cause has never been a requirement for a consensual search. The Fourth Amendment bars unreasonable searches, and "it is no doubt reasonable for the police to conduct a search once they have been permitted to do so." *Florida v. Jimeno,* 500 U.S. 248, 250–51, 111

S.Ct. 1801, 1803, 114 L.Ed.2d 297 (1991).[3] We further note that the lack of prior suspicion regarding Jachimko did not cause Hendrickson to have any greater role than that played by the confidential informant and undercover officers in our previous consent once removed cases. This case must be remanded so the district court can conduct the analysis required by *Diaz.*

█ Because the case is to be remanded, we believe it appropriate to address another related issue that has been raised in this case. Jachimko contends he revoked his consent; the government contends that, once granted, Jachimko could not withdraw his consent. The concept of consent once removed is, ultimately, a variation of the "traditional" consent doctrine; accordingly, because consent may be withdrawn, *United States v. Dyer,* 784 F.2d 812, 816 (7th Cir. 1986), Jachimko is entitled to argue that he withdrew his consent. However, "where a suspect does not withdraw his valid consent to a search for illegal substances *before* they are discovered, the consent remains valid and the substances are admissible as evidence." *Id.* (emphasis added). Thus, if Jachimko attempted to withdraw his consent after Hendrickson saw the marijuana plants, he could not withdraw his consent. It does not matter that Hendrickson was a confidential informant and not a police officer; as we stated earlier, *Paul* holds that the difference is not of constitutional import. 808 F.2d at 648 ("the incremental risk that [Hendrickson] would be an informant rather than an agent but would invite agents in to protect him and arrest [Jachimko] is too slight to bring the requirement of obtaining a warrant into play."). The question of whether and when Jachimko withdrew his consent are factual matters for the district court to consider.

### III. CONCLUSION

The district court erred by failing to apply the analytical framework from *Diaz* to the facts of this case. We therefore vacate the

---

**3.** It is worth noting, however, that we recently held that an allegedly consensual search may be unreasonable in a given situation. *McGann v. Northeast Illinois Regional Commuter R.R.,* 8 F.3d 1174, 1179 (7th Cir.1993) (purpose for requesting consent to search is important factor in gauging the reasonableness of the search).

suppression order and remand for further proceedings consistent with this opinion.