857 A.2d 1224

**Robert SMITH**

v.

**STATE of Maryland.**

**No. 1068, Sept. Term, 2003.**

Court of Special Appeals of Maryland.

Sept. 15, 2004.

4

Amy E. Brennan (Nancy S. Forster, Public Defender, on brief), for appellant.

Shannon E. Avery (J. Joseph Curran, Jr., Atty. Gen., on brief), for appellee.

Panel SALMON, JAMES R. EYLER and THEODORE G. BLOOM (Ret., specially assigned), JJ.

JAMES R. EYLER, J.

Robert Smith, appellant, was charged in the Circuit Court for Baltimore City with (1) distribution of heroin; (2) possession of heroin with intent to distribute; (3) possession of heroin; and (4) possession of marijuana. On June 4, 2003, the circuit court held a hearing on appellant's motion to suppress the heroin and marijuana that was seized from his home without a warrant. Following the court's denial of appellant's motion, appellant was tried by a jury, on June 5–6, 2003, and convicted on all four counts. On July 11, 2003, appellant was sentenced to 14 years' imprisonment for the distribution of heroin conviction.[1] The two possession of heroin convictions were merged for sentencing purposes, and the court imposed a one year concurrent sentence for the possession of marijuana conviction.

On appeal, appellant claims that the circuit court erred in denying his motion to suppress the heroin and marijuana seized from his home. In addition, appellant claims that the docket entries and the commitment order should be corrected to reflect the sentence commencement date as determined by the circuit court.

---

1. Pursuant to Md.Code (2002), § 5–608 of the Criminal Law Article, the first ten years of appellant's sentence was imposed without the possibility of parole.

**6**

We hold that the circuit court erred in denying appellant's motion to suppress and, therefore, reverse and remand for further proceedings. Thus, we need not address appellant's second issue.

### Suppression Hearing

The following testimony was adduced at appellant's suppression hearing. Detective Jornee Barnes of the Baltimore City Police Drug Enforcement Unit testified for the State. On October 11, 2002, Detective Barnes was working undercover, posing as a drug user. At about 1:45 p.m., she was in the 100 block of South Monroe Street and approached a black male, later identified as appellant, standing on the corner. She asked if "dope was out." Appellant responded, "Yeah." Detective Barnes walked with him to 114 South Monroe Street, a residence, where he used a key to open the door, and the two entered the house. Detective Barnes testified that she did not see anyone else in the home at that time. Appellant went to the basement door, opened it, reached down on the floor, and retrieved a plastic bag that contained gelatin capsules. He handed her two gel caps, she paid him with departmental currency (i.e., the serial numbers were pre-recorded), and they both left the house. Detective Barnes left the area in a car driven by her partner.

Detective Barnes testified that, when she got into the car driven by her partner, she notified other officers acting as an arrest team as to what had just transpired. She provided the arrest team with a description of appellant and told them where she had last seen him. Thereafter, the arrest team stopped appellant on the sidewalk near his home, and Detective Barnes drove by to confirm his identity. While outside, the arrest team searched appellant and recovered the departmental currency from appellant's person. They then entered appellant's home and seized a plastic bag from the basement steps, which contained 32 gel caps of suspected heroin, and marijuana, which was laying on a table.

Detective Barnes testified that, although she did not witness it firsthand, based on her knowledge from discussions with the

arresting officers, the officers used a key obtained from appellant to gain entry into his home after they arrested him. The police had no search warrant for this address, and Detective Barnes conceded that she had no information that appellant verbally consented to a search of his home by any member of the arrest team.

Detective Matthew Walker, a member of the Narcotics Department for the Baltimore City Police Department and a member of the arrest team, testified that appellant was stopped and arrested on the sidewalk in front of 114 South Monroe Street. Detective Walker spoke to Detective Barnes by cellular phone, and she informed him that she had purchased drugs inside the home and had observed a stash of drugs in the house.

Detective Walker relayed the information to Sergeant Mancuso and then observed Mancuso and Detectives Derek Ostrow and Edgar Allen approach the door to 114 South Monroe Street and enter the house. Detective Walker did not know how the door was opened.[2] Prior to approaching the door, the police were informed by appellant that there was a hearing-impaired woman inside the residence.

After the first officers secured the premises, Detective Walker and Detective David Classing entered the house with appellant. Detective Walker went to the basement steps, where he retrieved two bags containing 32 gel caps of suspected heroin. According to Detective Walker, other detectives located some marijuana on a table in plain view.

At the close of all the evidence, the circuit court denied appellant's motion to suppress.

### Trial

On June 5–6, 2003, appellant was tried by a jury. Detective Barnes and Detective Walker both testified in a manner

---

2. Detective Walker was unsure whether the officers entered the house by way of appellant's key, which he had given Sergeant Mancuso, or because someone in the house had opened the door and let them in.

consistent with their testimony at appellant's suppression hearing. In addition, several other police officers involved in appellant's arrest testified for the State.[3]

Criminalist Anthony Rumber of the Baltimore City Police Department testified that he chemically analyzed the substances confiscated from appellant's home and determined that they were heroin and marijuana.

Appellant testified in his own defense, denying that he sold heroin to Detective Barnes or that she had ever been inside his home. He testified further with regard to the heroin Detective Walker found in his basement that he had "never seen it a day in [his] life."

Felicia Griffin testified that, on October 11, 2002, she lived at the residence with appellant, that she was hearing-impaired, and that, in addition to appellant and herself, her 24–year old cousin and five children lived in this house.

Following his conviction and sentencing, appellant filed a timely appeal to this Court.

### Parties' Contentions

Appellant contends that the circuit court erred in denying his motion to suppress the evidence seized from his home without a warrant, which consisted of heroin and marijuana. He further argues that the docket entries and commitment order must be corrected in order to reflect the sentence commitment date as determined by the circuit court.

In response, the State contends that the circuit court properly denied appellant's motion to suppress evidence, arguing that both *Baith v. State,* 89 Md.App. 385, 598 A.2d 762 (1991), and the "consent once removed" doctrine support the circuit court's findings. Moreover, the State argues that the commitment records accurately reflect appellant's sentence, and as a

---

3. Detective Ostrow testified that he searched appellant inside appellant's residence and recovered the $20 bill that Detective Barnes had given appellant. He determined that it was the same bill by comparing its serial number to that of the previously recorded departmental currency.

 

result, for all practical purposes, appellant's sentence is correctly recorded. To the extent that the docket entries are incorrect, the State does not object to an order of correction.

## *Discussion*

### Standard of Review

In reviewing the denial of a motion to suppress, this Court must analyze the evidence in a light most favorable to the prevailing party, in this case, the State. *See, e.g., White v. State,* 374 Md. 232, 250, 821 A.2d 459 (2003); *Wilkes v. State,* 364 Md. 554, 569, 774 A.2d 420 (2001). The factual findings of the circuit court must be accepted unless they are clearly erroneous. *Wilkes,* 364 Md. at 569, 774 A.2d 420. Important, however, as to the ultimate question of whether the search was valid, this Court must make its own independent *de novo* appraisal by reviewing the law and applying it to the facts of the instant case. *Id.; Handy v. State,* 126 Md.App. 548, 552, 730 A.2d 710 (1999), *aff'd,* 357 Md. 685, 745 A.2d 1107 (2000). When we do so, our review of the trial court's denial of appellant's motion to suppress is limited to the record of the suppression hearing, and thus, we will not consider any extraneous evidence presented at trial but not presented during the suppression hearing. *Nathan v. State,* 370 Md. 648, 659, 805 A.2d 1086 (2002).

### Merits

Appellant contends that the circuit court erroneously denied his motion to suppress the heroin and marijuana seized from his home during the warrantless search. Specifically, appellant claims that the State's argument that the warrantless search was justified by the "consent once removed doctrine" is unpersuasive. Because the police searched his home without a warrant and no relevant exception applies, appellant argues, the evidence obtained during this search should be suppressed.

The Fourth Amendment of the United States Constitution provides, in pertinent part, "The right of the people to be

secure in their persons, houses, papers, and effects, against unreasonable searches and seizures shall not be violated, and no warrants shall issue, but upon probable cause. . . . " By its plain language, this Amendment protects the public from unreasonable searches and seizures. *See Whren v. United States*, 517 U.S. 806, 809–10, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996).

█ Under the Fourth Amendment, absent a few limited circumstances such as exigent circumstances or consent, warrantless entries into a person's home are considered patently unreasonable. *Payton v. New York*, 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980). *See also Baith v. State*, 89 Md.App. 385, 387, 598 A.2d 762 (1991)("When a citizen withdraws into the sanctuary of the home, a governmental intrusion into that sanctuary, either to search for evidence or to arrest the homeowner, requires a high level of justification.") (citations omitted).

█ Nevertheless, as the United States Supreme Court explained in *Lewis v. United States*, 385 U.S. 206, 87 S.Ct. 424, 17 L.Ed.2d 312 (1966),

[where] the home is converted into a commercial center to which outsiders are invited for purposes of transacting unlawful business, that business is entitled to no greater sanctity than if it were carried on in a store, a garage, a car, or on the street. A government agent, in the same manner as a private person, may accept an invitation to do business and may enter upon the premises for the very purposes contemplated by the occupant.

*Id.* at 211, 87 S.Ct. 424 (citations omitted). *See also Baith*, 89 Md.App. at 388, 598 A.2d 762 ("when, as here, the home has been debased by the homeowner himself into some sort of criminal emporium, its status as sanctum sanctorum is rudely diminished. The compromising agency in such a case is not the investigative opportunism of the police but the commercial trafficking of the occupant.").

█ In the instant case, neither party contends that Detective Barnes's initial entry into appellant's home was un-

constitutional. Despite the fact that Detective Barnes used deception to obtain appellant's consent, under *Lewis* and its progeny, once appellant consented to Detective Barnes's entry into his home, she had a legitimate right to be there, and no unconstitutional entry will be found. 385 U.S. at 210–11, 87 S.Ct. 424.

Moreover, once the sale of heroin occurred, Detective Barnes had the right to arrest appellant. *See Conboy v. State,* 155 Md.App. 353, 378, n. 11, 843 A.2d 216 (2004)("Under Maryland law, a warrantless arrest may be made for any offense committed in the officer's presence."). Detective Barnes did not make an immediate arrest, however. She completed the sale, and she and appellant then left appellant's home together.

▄▄▄▄ The arrest team subsequently arrested appellant on the sidewalk. This arrest was based on probable cause, resulting from Detective Barnes's interaction with appellant, and is not challenged on appeal. *Conboy,* 155 Md.App. at 364, 843 A.2d 216 (a police officer with probable cause to believe that a suspect has or is committing a felony may arrest the suspect without a warrant). Additionally, the officers were entitled to search appellant incident to his arrest. *See id.* (noting that a search incident to a lawful arrest is another exception to the warrant requirement).

Thus, the only issue before us is whether the arrest team had the right to enter and search appellant's home after they arrested appellant. The circuit court held that they did have such a right, based on appellant's initial consent to Detective Barnes's entry into his home, sometimes referred to as "consent once removed." This is an issue of first impression in the State of Maryland.

The circuit court, relying on *Baith v. State, supra,* and various other authorities, found that

> because Officer Barnes could have forfeited her undercover status and arrested the Defendant and seized the 30–some bags at the time of the buy, that the fact that she remained undercover and got other officers to do it a short time later,

and they did not go any further than where she went, . . . that alone is not subject to the strictures of the Fourth Amendment because the Defendant had violated his expectation of privacy by letting her see his stash.

In *Baith*, the defendant invited a confidential informant, Barbara Walters, onto his property for the purpose of selling her a large quantity of cocaine. While negotiating the transaction, Walters left the building, ostensibly to retrieve purchase money from her car. When she returned to the building a few moments later, she was accompanied by two police agents, who subsequently arrested Baith and his partner and searched the building.

This Court held that "[t]he critical police intrusion into [Baith's] constitutionally protected zone of privacy occurred when the police agent, Barbara Walters, by prior arrangement with [Baith] and with immediate consent of [Baith's partner], first entered the building." 89 Md.App. at 393, 598 A.2d 762. The Court went on to note that the initial invitation or consent to Barbara Walters "extended as well to her reentries. Each reentry was not an independent constitutional phenomenon calling for independent justification but was simply a continuation of the initial entry." *Id.* at 394, 598 A.2d 762. The Court then concluded that Baith had lost any expectation of privacy "when he consciously and deliberately invited Barbara Walters into his building[,]" and that "[t]here was no remaining expectation of privacy in what had already been fully exposed." *Id.* at 395–96, 598 A.2d 762.

The instant case is distinguishable from *Baith*, however, because Detective Barnes had no expectation or right of reentry into appellant's home. Unlike *Baith*, in which Barbara Walters specifically informed Baith that she was going to her car and would return momentarily with the purchase money, once the drug sale was complete in the instant case, Detective Barnes and appellant left appellant's home together. There was no indication that either had any intention of returning. Also unlike *Baith*, appellant was arrested on the

sidewalk, not inside the home. Thus, we cannot find that the search of appellant's home was justified under *Baith*.

■ Although the *Baith* Court failed to expressly adopt or reject the "consent once removed" doctrine, and for the reasons outlined below, we need not do so here, we feel it is instructive to discuss this doctrine. The doctrine of "consent once removed" was originally developed by the United States Court of Appeals for the Seventh Circuit. Pursuant to that doctrine, a defendant who consents to an initial entry by a confidential informant or government agent effectively consents to a second entry by officers called to assist that agent, when the initial agent "(1) entered at the express invitation of someone with authority to consent; (2) at that point established the existence of probable cause to effectuate an arrest or search; and (3) immediately summoned help from other officers." *United States v. Akinsanya*, 53 F.3d 852, 856 (7th Cir.1995). It makes no constitutional difference whether the case involves a confidential informant or an undercover police officer or agent. *United States v. Jachimko*, 19 F.3d 296, 299 (7th Cir.1994).[1]

■ The right of reentry is clearly not absolute, however. In *United States v. Diaz*, 814 F.2d 454 (7th Cir.1987), the Seventh Circuit specifically noted that, with regard to the doctrine of "consent once removed," it did "not intend to

---

4. Several other courts have adopted this doctrine as well. *See, e.g., United States v. Pollard*, 215 F.3d 643, 649 (6th Cir.2000)("We adopt the doctrine of 'consent once removed' because the entry was lawful under those circumstances."); *United States v. Bramble*, 103 F.3d 1475, 1478 (9th Cir.1996)("We join the Seventh Circuit in holding that where an undercover agent is invited into a home, establishes the existence of probable cause to arrest or search, and immediately summons help from other officers, the warrantless entry of the other officers does not violate the Fourth Amendment."); *United States v. Brand*, 556 F.2d 1312, 1317 (5th Cir.1977)("As this Court has held repeatedly, additional investigators may ... enter a citizen's property after one official has already intruded legally."); *United States v. Samet*, 794 F.Supp. 178, 182 (E.D.Va.1992)(holding that the circumstances of this case satisfied all the conditions of the "consent once removed" doctrine and that "[a]ccordingly, the warrantless entry by the officers to assist in the arrest ... did not violate the Fourth Amendment.").

**14**

suggest by our analysis that one consensual entry means that law enforcement agents may thereafter enter and exit a home at will." *Id.* at 459. Thus, even under the "consent once removed doctrine," a defendant's forfeiture of his right to privacy cannot be considered indefinite or ongoing.

In fact, in nearly all the cases discussing the doctrine of "consent once removed," the confidential informant or undercover agent either remained on the premises while the officers entered. or, if not, they maintained an express or implied right of reentry. *See, e.g., Pollard,* 215 F.3d at 646 (confidential informant remained in defendant's home when takedown signal was given and backup officers arrived); *Bramble,* 103 F.3d at 1477 (undercover agents remained on premises when backup officers entered defendant's home); *Akinsanya,* 53 F.3d at 854–55 (undercover agent gave signal in defendant's apartment; officers barged in as confidential informant opened door to leave); *Diaz,* 814 F.2d at 456 (government agent left room, with the expectation that he would return momentarily with the purchase money; he returned with the arrest team); *Brand,* 556 F.2d at 1314 (police officers came onto property with emergency technicians in response to call for emergency help); *Samet,* 794 F.Supp. at 179–80 (undercover officer gave arrest signal while remaining in defendant's apartment, whereby officers broke in and searched); *Williams v. State,* 937 S.W.2d 23, 25 (Tex.App.1996) (undercover officer left apartment, ostensibly to retrieve money, gave secret signal to police, who stormed apartment); *State v. Johnston,* 184 Wis.2d 794, 804, 518 N.W.2d 759 (1994) (undercover officers remained on premises when arrest team entered defendant's home).

When the undercover agent or confidential informant did not remain on the premises and there was no expectation or right of reentry, two courts have found that the "consent once removed" doctrine had not been satisfied. Specifically, in *People v. Finley,* 293 Ill.App.3d 377, 227 Ill.Dec. 672, 687 N.E.2d 1154 (1997), the Fifth District Appellate Court of Illinois held that when a confidential informant purchased cocaine from the defendant's trailer, left the trailer, and then gave the arrest signal to police who stormed the trailer,

arrested defendant, and searched the trailer, "the confidential informant's consent to enter terminated when he accomplished his purpose and left defendant's residence with no ostensible consent to reenter." *Id.* at 1157. Therefore, the court suppressed the evidence obtained during the subsequent search of the defendant's trailer.

In the instant case, after Detective Barnes purchased the drugs from appellant, she left the premises of his home. She would have had to seek permission to reenter his house, and there is no indication that he would have granted such permission. In fact, it is unlikely, because appellant left the house also. The transaction had ended; in order to re-gain permission for reentry, there would have had to have been a new transaction.

Additionally, even if the "consent once removed" doctrine were applicable, in the absence of a right to reenter, as discussed in the two following paragraphs, it would extend only to an immediate call for backup with an entry by the arresting officers to arrest appellant on the premises. In that event, the police would have a right to search incident to arrest, including some portions of the premises. In this case, however, appellant left the home with Detective Barnes, and he was not arrested in his home. Thus, were we to adopt the "consent once removed" doctrine, the circumstances of this case would not allow us to hold that the police had a right to search appellant's residence as a search incident to his arrest, because appellant was not arrested in his home.

Two courts have held that evidence seized during a search incident to arrest did not have to be suppressed, even when an undercover officer left the premises and/or had no expectation or right of reentry. In *Commonwealth v. Moye*, 402 Pa.Super. 81, 586 A.2d 406 (1991), the Superior Court of Pennsylvania considered whether the "consent once removed" doctrine applied when an undercover agent purchased drugs from the defendant, stepped out of the apartment and into the hallway and signaled back up officers, who then entered the defendant's apartment. The court considered whether the right to

arrest Moye "continued while Officer Williamson went to the stairway to obtain 'back up,' despite the closing of the apartment door during her momentary absence." *Id.* at 408. The court held that, "while·one consensual entry does not entitle a law enforcement official to return at any substantially later time, an officer's momentary exit to secure back up does not invalidate an otherwise legal arrest." *Id.* at 409. Having determined that the arrest was valid, the court held that evidence seized in plain view did not have to be suppressed.

Similarly, in *State v. Henry*, 133 N.J. 104, 627 A.2d 125 (1993), an undercover officer purchased drugs from the defendant and subsequently left the defendant's apartment. The officer radioed his back up team and informed them that he had made the undercover buy and described the location and three individuals involved in the sale. The undercover officer remained outside while the back up team arrested the defendant. The New Jersey Supreme Court held that, under the "consent once removed" doctrine, "the consensual basis for the initial entry, probable cause for an immediate arrest arising out of that entry, the short amount of time and continuity between the two entries, and the legitimate grounds for delaying the initial arrest until backup officers could arise" established the reasonableness of the warrantless entry into the defendant's home in order to arrest her for the offense the police had earlier witnessed. *Id.* at 132. Subsequent to this legal arrest, the court found the contraband seized was the result of a search incident to arrest and was, therefore, admissible. *Id.* The court specifically noted that the officers entered the house to arrest the defendant, not to conduct a search, and that the search was only valid as a search incident to that arrest. *Id.*

In both of those cases, the defendants were arrested, without a warrant, in their homes, and the subsequent searches of their homes were allowed as searches incident to those legal arrests. The instant case is clearly distinguishable. As explained above, after selling heroin to Detective Barnes, probable cause existed to arrest appellant such that either Detective Barnes or the subsequent arrest team had the right to arrest

him. Even if we assume that the initial consent for Detective Barnes to enter extended to the members of the arrest team to enter the premises to arrest appellant, appellant was not arrested in his home. Appellant had left his home, and his arrest occurred on the street. While the search of appellant's person incident to his arrest for the prior sale certainly was lawful, such lawfulness did not encompass a search of his home. Thus, the heroin and marijuana obtained from appellant's home should have been suppressed.

Alternatively, the State argues that appellant's consent was evidenced by (1) the fact that he provided the police with a key to his house, and (2) the reasonable inference, based on the testimony of Detective Walker, that the female occupant of the house opened the door and permitted the officers to enter.[5] While the State concedes that it did not

---

5. Although the issue of exigent circumstances was discussed by the court below, the State did not argue it, either at the suppression hearing, or on appeal. Moreover, in response to an inquiry at oral argument, the State expressly stated that it was not relying on exigent circumstances. Consequently, there is no need to decide the issue. *See Steagald v. United States*, 451 U.S. 204, 209, 101 S.Ct. 1642, 68 L.Ed.2d 38 (1981)(state's acquiescence in finding by court may result in loss of right to raise on appeal); *Payton v. New York*, 445 U.S. 573, 583, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980). Nevertheless, because the hearing court raised the issue, we shall briefly address it.

It is well settled that, when exigent circumstances exist, police officers may enter a person's home without a warrant. *See Stackhouse v. State*, 298 Md. 203, 468 A.2d 333 (1983)(exigent circumstances might justify a warrantless search or seizure). In *Stackhouse*, the Court of Appeals noted that exigent circumstances require "the strong likelihood" that "the removal or destruction of the evidence is imminent." *Id.* at 214, 468 A.2d 333. Significantly, more than the mere presence of a third party in a home is required. *Id.* at 219, 468 A.2d 333.

In the instant case, Detective Walker testified that at some point after appellant was arrested, but before the police searched his home, appellant informed police that a hearing-impaired woman was inside his home. It is not clear from the testimony when appellant so informed the police and, specifically, whether it was before or after the police obtained a key from appellant. Regardless, as the suppression court correctly held, the testimony was insufficient to find that exigent circumstances existed to support the warrantless search. Detective Barnes testified that she did not see anyone else in the home when she purchased drugs from appellant. There was no indication that the woman in appellant's home even knew the drugs existed, much less that

make an argument on these points below, it argues that the facts presented at the hearing support a finding that the entry into the house was as the result of direct consent.

Regarding consent searches, the Court of Appeals has said: The burden of proving that the consent was freely and voluntarily given is upon the State. Consent that is coerced by threats or force, or granted only in submission to a claim of lawful authority, is not voluntary. Coercion that defeats voluntariness may be by explicit means, by implied threat or covert force. Although custody is a factor to be considered in determining voluntariness, it is not dispositive, and a person in custody may validly consent to a search.

*Doering v. State*, 313 Md. 384, 401–02, 545 A.2d 1281 (1988) (citations omitted).

 Detective Barnes and Detective Walker testified at the suppression hearing that they were unsure as to how the subsequent arrest team obtained entry into appellant's house. Detective Barnes was not with the arrest team when appellant was arrested and the search was carried out. She testified that she had no information that appellant consented to a search of his home, but that, based on her knowledge, she thought they had used a key to gain entry. Detective Walker stated that he was "not 100 percent sure how it was opened[,]" and that he was "not sure if they used the key provided by the Defendant, or if the female [in the house] actually opened the door."

The suppression court stated that if the motion to suppress had been based solely on a direct consent argument, it would have granted the motion, as the State failed to meet its heavy burden of proving that appellant had consented to the search of his home. Based on the testimony at the suppression hearing, we find this analysis to be correct. Accordingly, we hold that, under a traditional consent analysis, the State failed

---

she was imminently or currently in the process of destroying them when appellant was arrested.

Thus, the suppression court's finding that no exigent circumstances existed was correct.

to demonstrate that appellant consented to the search of his home by the arrest team.

**JUDGMENTS REVERSED.**

**CASE REMANDED TO THE CIRCUIT COURT FOR BALTIMORE CITY FOR FURTHER PROCEEDINGS NOT INCONSISTENT WITH THIS OPINION.**

**COSTS TO BE PAID BY THE MAYOR AND CITY COUNCIL OF BALTIMORE.**