RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206
File Name: 05a0092p.06

# UNITED STATES COURTS OF APPEALS

## FOR THE SIXTH CIRCUIT

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

No. 03-5875

MIN YOON,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Middle District of Tennessee at Nashville.
No. 02-00101—Todd J. Campbell, District Judge.

Argued: October 29, 2004

Decided and Filed: February 24, 2005

Before: KENNEDY and GILMAN, Circuit Judges; HOOD, District Judge.[*]

_____

## COUNSEL

**ARGUED:** Norman J. Silverman, Houston, Texas, for Appellant. Van S. Vincent, ASSISTANT UNITED STATES ATTORNEY, Nashville, Tennessee, for Appellee. **ON BRIEF:** Norman J. Silverman, Houston, Texas, for Appellant. Van S. Vincent, William Cohen, ASSISTANT UNITED STATES ATTORNEY, Nashville, Tennessee, for Appellee.

HOOD, D. J., delivered the opinion of the court. KENNEDY, J. (pp. 7-9), delivered a separate concurring opinion. GILMAN, J. (pp. 10-13), delivered a separate dissenting opinion.

_____

## OPINION

_____

HOOD, District Judge. In June of 2002, law enforcement officers staked out Min Yoon's apartment and observed an informant, whom they had equipped with a wire, enter. When the police heard the informant asking Yoon about quantities of marijuana and the logistics of shipping it, they forcibly entered the apartment. After finding marijuana on the premises, the police arrested Yoon. Yoon moved to suppress the evidence found in the apartment because it was obtained without a warrant. The district court denied his motion. He subsequently entered a conditional guilty plea relating to the distribution of marijuana.

---

[*]The Honorable Joseph M. Hood, United States District Judge for the Eastern District of Kentucky, sitting by designation.

On appeal, Yoon alleges that the district court erred in denying his motion to suppress the evidence obtained without a warrant. He further alleges that the district court's assessment of a two-point sentencing enhancement for obstruction of justice was clearly erroneous, both under the United States Sentencing Guidelines and under the new precedent of *Blakely v. Washington*, 542 U.S. ___, 124 S. Ct. 2531 (2004). For the reasons stated below, we **AFFIRM** the judgment of the district court.

## I. FACTUAL AND PROCEDURAL HISTORY

### A.    Factual background

#### 1.    *Suppression Issue*

Following his arrest in June of 2002 for a drug deal, Meen W. Kim agreed to act as an informant for the Tennessee Bureau of Investigation (TBI). As part of this arrangement, Kim immediately set up a marijuana transaction with Yoon. Kim spoke with Yoon by phone, which resulted in Yoon's inviting him to an apartment at 2010 Brentridge Circle, in Nashville, Tennessee. The police provided Kim with an audio transmitter and instructed him to subtly indicate when he saw the marijuana. Although Kim was provided with a bundle of cash, it was significantly less than the amount that would have been required to complete the transaction. This caused one of the TBI officers conducting the raid to be concerned for Kim's safety.

Once Yoon admitted Kim into the apartment, and Kim observed the marijuana, Kim notified the officers of his observation by questioning Yoon, asking "[h]ey, are you having to break it down?" Yoon provided an affirmative response. Kim then asked Yoon, "[w]ell, is that all there is?" to which Yoon replied "[n]o, no, there's more." Upon hearing this exchange, the police entered the apartment. The officers arrested Yoon as he tried to flee by climbing out a window.

Subsequent to his apprehension, and having been advised of his Miranda warnings, Yoon was asked for consent to search the apartment. Appellant answered, "Go ahead, you're already here." The eighty pounds of marijuana seized in the apartment, however, were observed in plain view as the officers conducted a protective sweep.

#### 2.    *Sentencing Issues*

While on release pending sentencing, Yoon posted an anonymous webpage on www.asianavenue.com featuring a photograph of Kim, who was now his co-defendant. The words "FBI Informant" appeared below the photograph, and an image of a gun was displayed next the photo, firing in the direction of Kim's head. Additional text announced that Yoon hoped Kim would "get . . . [his] ass beat daily like [he] did last time there in Mississippi," and gave a blunt summation of Yoon's sentiments: "Fuck Joe Kim for snitching on me." When he was informed that the website might be illegal, Yoon removed it.

### B.    Procedural background

#### 1.    *Suppression Issue*

Yoon moved to suppress the evidence obtained from the apartment, alleging a violation of his Fourth Amendment right to be free from unreasonable searches and further claiming that the search "was so outrageous as to violate his Fifth Amendment right to due process of law." The district court denied Yoon's motion. Yoon then pled guilty to conspiracy with the intent to distribute 50 or more kilograms of marijuana, in violation of 21 U.S.C. § 841(a)(1) and 21 U.S.C. § 846. In the plea agreement, however, Yoon specifically reserved "the right to appeal the determination of the appropriateness of the entry and search of 2010 Brentridge Circle, Nashville, TN."

### 2.        *Sentencing Issues*

Yoon's Presentence Report noted that he had posted a webpage threatening Kim, which led to a recommendation of a two-point adjustment for obstruction of justice. No jury found Yoon guilty of threatening Kim, and Yoon did not plead guilty to this offense, although he did admit to the webpage posting at his sentencing hearing. Over Yoon's objection, the district court followed the report's recommendation, explaining its decision as follows:

> In terms of the reasons for the sentence, in a nutshell, Mr. Yoon, you show no evidence of remorse. Your conduct while on release pending sentencing is outrageous. What you posted on the website, materially, objectively and subjectively threatened a witness and a co-defendant and deserves the top of the range punishment, which the court is imposing.

This timely appeal followed.

## II.  STANDARD OF REVIEW

Factual findings supporting a district court's ruling on a motion to suppress are upheld unless clearly erroneous, but "[t]he court's final determination as to the reasonableness of the search is a question of law reviewed de novo." *United States v. Galloway*, 316 F.3d 624, 628 (6th Cir. 2003) (upholding the district court's denial of a motion to suppress evidence that was found during a customs inspection). Where the district court has denied the motion to suppress, "the appellate court must consider the evidence in the light most favorable to the government." *United States v. Erwin*, 155 F.3d 818, 822 (6th Cir. 1998) (en banc decision upholding the district court's denial of a motion to suppress evidence that was found during a search of the defendant's vehicle).

A similar standard applies to the district court's enhancement of Yoon's sentence under the Sentencing Guidelines for obstruction of justice. The factual findings underlying the district court's decision will be reversed only if clearly erroneous, but the legal interpretation of the Guidelines is reviewed de novo. *United States v. Burke*, 345 F.3d 416, 428 (6th Cir. 2003) (upholding a sentencing enhancement for obstruction of justice).

## III.  DISCUSSION

### A.        Yoon's Motion to Suppress

The Fourth Amendment protects "the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. "[A] search or seizure carried out on a suspect's premises without a warrant is per se unreasonable, unless the police can show that it falls within one of a carefully defined set of exceptions based on the presence of 'exigent circumstances.'" *Coolidge v. New Hampshire*, 403 U.S. 443, 474 (1971) (holding that a warrant issued by the state Attorney General who prosecuted the defendant was invalid). *See also Illinois v. Rodriguez*, 497 U.S. 177, 192 (1990) ("The Court has often heard, and steadfastly rejected, the invitation to carve out further exceptions to the warrant requirement for searches of the home. . . .").

The exception claimed by the government in this case is the doctrine of "consent once removed," accepted by the Sixth Circuit in *United States v. Pollard*, 215 F.3d 643 (6th Cir. 2000). According to *Pollard*, the police can enter a suspect's premises to  arrest the suspect without a warrant if

[an] undercover agent or informant:  1) entered at the express invitation of someone with authority to consent; 2) at that point established the existence of probable cause to effectuate an arrest or search[1]; and 3) immediately summoned help from other officers.

*Pollard,* 215 F.3d at 648, *quoting United States v. Akinsanya*, 53 F.3d 852, 856 (7th Cir. 1995) (holding that consent given to a government informant, unaccompanied by a police officer, was sufficient to authorize the search) (quotation marks omitted).  The *Pollard* court, noting that the Sixth Circuit had declined to rule on this issue in *United States v. Ogbuh*, 982 F.2d 1000 (6th Cir. 1993), adopted the doctrine of "consent once removed," *Pollard*, 215 F.3d at 649, and upheld the constitutionality of the search at issue.

Unlike in *Akinsanya* and the present case, however, the search in *Pollard* was conducted after the defendant invited both an informant and an undercover police officer onto the premises.  *See Pollard*, 215 F.3d at 646 ("The informant and Detective . . . Askew, who was acting undercover, approached the house and knocked on the door . . . [and] Pollard admitted them.").  The issue faced by the *Pollard* court, therefore, was not whether the doctrine of "consent once removed" applies where consent is given to a civilian informant only, but whether the doctrine applies where consent is given to an undercover police officer and the informant at the same time.  For this reason, the *Pollard* courts specific statement that the doctrine applies when "an officer *or informant* (emphasis added) . . . enters at the express invitation of someone with authority to consent," *Pollard*, 215 F.3d at 648)(emphasis added), was dicta, rather than part of the holding.  *See Billeke-Tolosa v. Ashcroft*, 385 F.3d 708, 712 (6th Cir. 2004) ("Dicta...is language that is only incidental to th[e] holding.").

"The prior decision [of a Sixth Circuit panel] remains controlling authority unless an inconsistent decision of the United States Supreme Court requires modification of the decision or this Court sitting en banc overrules the prior decision."  *Darrah v. City of Oak Park*, 255 F.3d 301, 309 (6th Cir. 2001) (discussing the effect of published opinions by previous panels).  *See also* 6th Cir. R. 206(c) (cited in *Darrah*; noting that "[r]eported panel opinions are binding on subsequent panels.  Thus, no subsequent panel overrules a published opinion of a previous panel. . . .").  This rule, however, "does not extend to dicta." *United States v. Jenkins*, 4 F.3d 1338, 1345 n.8 (6th Cir. 1993) (distinguishing a previous Sixth Circuit panel's dicta from its holding).  The question of whether the doctrine of "consent once removed" applies where only a civilian informant receives consent, therefore, has not yet been decided by the Sixth Circuit despite the broad language in *Pollard*.

In order to determine whether the warrantless entry into Yoon's apartment by law enforcement officers violated the Fourth Amendment, the Court must ascertain whether the doctrine of "consent once removed" applies when the recipient of the consent is an informant unaccompanied by an undercover officer.  Although this is an issue of first impression in the Sixth Circuit, several similar Seventh Circuit cases provide helpful guidance.

In *United States v. Paul,* 808 F.2d 645 (7th Cir. 1986), the Seventh Circuit slightly extended the doctrine of "consent once removed."  *Paul* was similar to Seventh Circuit cases in which the doctrine had traditionally been applied except, instead of an undercover officer being granted consent to enter, consent was extended only to a confidential informant.  In *Paul,* the confidential informant had arranged to buy a

---

[1] This doctrine does not permit the officers who enter a suspect's home to conduct a general search of the home.  Rather, it provides that once an undercover agent or informant establishes probable cause to arrest or to search (i.e., probable cause to obtain a search warrant) then the undercover officer or informant in the suspect's home may summon other officers to assist in effectuating the *arrest*.  As the doctrine is based upon consent to enter one's home (and not consent to search), the area in the suspect's home that the officers are entitled to be in is limited by the scope of the consent originally given to the undercover officer or informant.  *United States v. Bramble*, 103 F.3d 1475, 1478(9th Cir. 1996).  The officers may of course seize anything in plain view and are entitled to conduct a protective sweep, but they may not conduct a general search without "first satisfying the ordinary requirements of consent, a warrant, or exigent circumstances which excuse the failure to obtain a warrant." *Id*. at 1478-79.

bale of marijuana from the defendant. The agents involved outfitted the confidential informant with an alert button and instructed him to press it once he observed the marijuana. Once pressed, the alert button summoned agents waiting outside the home. The *Paul* Court held that, because Paul's privacy interests had already been compromised, and because if the informant had happened to be an agent he would have been entitled to summon more agents after viewing the drugs, the principle espoused in other "consent once removed" cases "extends to the case where the initial consensual entry is by a confidential informant." *Paul,* 808 F.2d at 648. The Seventh Circuit has followed the same reasoning in two subsequent cases. *See United States v. Jachimko,* 19 F.3d 296 (7th Cir. 1994); *United States v. Akinsanya,* 53 F.3d 852 (7th Cir. 1994); see also *United States v. Bramble,* 103 F.3d 1475, 1478-79 (9th Cir. 1966). This Court agrees with and adopts the sound reasoning of the Seventh Circuit in *Paul, Jachimko,* and *Akinsanya.*

In the case *sub judice*, Kim, acting as an informant for law enforcement, carried out a series of monitored conversations with Yoon. These monitored telephone conversations concluded in an agreement to purchase 20 pounds of marijuana. The exchange was to take place at Yoon's apartment. On the night of the exchange, Kim was invited into the residence by Yoon. Clearly, Yoon had the authority to consent to another being on the premises. Once inside the apartment, Kim observed the marijuana and immediately notified awaiting officers as to its presence via an audio transmitter. Notification that marijuana was in the residence established the necessary probable cause to effectuate an arrest.[2] Accordingly, all three criteria of the "consent once removed" doctrine were established in the present case.

In *Pollard,* we held that when one invites an undercover agent and an informant into his residence, the agent or informant can summon back-up officers for assistance, and that these back-up officers are acting within their constitutional limits when they enter since no further invasion of privacy is involved once the undercover officer and informant make the initial consensual entry. Today, we extend that concept to cases in which a confidential informant enters a residence alone, observes contraband in plain view, and immediately summons government agents to effectuate the arrest.

## B.     Two-Point Enhancement for Obstruction of Justice

The district court assessed a two-point enhancement based upon § 3C1.1 of the Sentencing Guidelines, obstructing or impeding the administration of justice. In the Addendum to Yoon's Plea Petition, Yoon acknowledged that 18 U.S.C. § 3742 affords a defendant the right to appeal the sentence imposed. (Addendum to the Plea Petition at ¶9). By signing the Addendum to the Plea Petition, Yoon waived his "right to appeal any sentence within the maximum provided in the offense level as determined by the court or the manner in which that sentence was determined on the grounds set forth in 18 U.S.C. § 3742..." (Addendum to the Plea Petition at ¶9). There is no reason that Yoon's knowledgeable and voluntary waiver of his right to appeal should not be enforced.[3]

The defendant further alleges that the district court's assessment of a two-point sentencing enhancement for obstruction of justice was clearly erroneous in the light of *Blakely v. Washington*, 542 U.S. ___ (2004). This argument likewise fails for the defendant has clearly waived his right to appeal his sentence.

Accordingly, the sentence of the district court is affirmed.

---

[2]Tennessee is one of those states that has granted the arrest power to its citizens. Tenn. Code Ann. § 40-7-109(a)(3)(2004)("A private person may arrest another ...[w]hen a felony has been committed, and the arresting person has reasonable cause to believe that the person arrested committed it."). Thus, Kim could have made the arrest himself had he chosen to do so. Instead, he called officers to assist him, a permissable choice. *Pollard*, 215 F.3d at 548.

[3]In any event, the defendant's actions in "outing" a government witness/co-defendant via the internet would be just the type of conduct warranting the obstruction of justice enhancement. USSG § 3C1.1, comment.(n.4(a)).

## IV.  CONCLUSION

Because we conclude that the warrantless entry into Defendant Yoon's apartment did not violate the Fourth Amendment based on the doctrine of "consent once removed", and because Yoon waived the right to appeal his sentence by signing the Addendum to his Plea Petition, the judgment and sentence of the district court are hereby **AFFIRMED.**

---

### CONCURRENCE

---

KENNEDY, Circuit Judge, concurring. I concur in Judge Hood's opinion but write separately to explain why the "consent once removed doctrine" adopted by our Court in *United States v. Pollard*, 215 F.3d 643 (6th Cir. 2000), to apply to undercover police officers (and in dicta to informants) is equally applicable to informants in light of the doctrine's conceptual foundation.

The Fourth Amendment, the Supreme Court declared, draws a firm line at the entry to one's house such that a police officer may not, in the absence of exigent circumstances or consent, enter a house to arrest or search without first obtaining a warrant. *See Payton v. New York*, 455 U.S. 573, 585-589 (1980) (holding that since the physical entry of the home is the chief evil against which the wording of the Fourth Amendment is directed, absent exigent circumstances or consent, officers may not enter a home without a warrant). Neither the exigent circumstances nor the traditional consent exception to the warrant requirement supports the application of the "consent once removed" doctrine. This doctrine appears to have arisen out of cases where the government was unable to rely upon exigent circumstances to justify the warrantless entry into a suspect's home by officers who entered the suspect's home after the government informant or undercover agent had established probable cause to arrest the suspect. *United States v. Paul*, 808 F.2d 645, 647 (7th Cir. 1986) (noting that the officers entry into the suspects home was not "within the emergency exception to *Payton*); *United States v. Akinsanya*, 53 F.3d 852, 856 & n.1 (7th Cir. 1995) (noting that "[t]he government wisely chose not to pursue its exigent circumstances argument . . . [since] [e]xigent circumstances did not exist" in this case).[1]

Recognizing that exigent circumstances did not support the warrantless entry of police officers into a suspect's home after the agent or informant inside the home established probable cause to arrest the suspect, the courts instead relied upon the other exception to the warrant requirement, consent. *See Paul*, 808 F.2d at 647-48 ("Although we do not think the search was within the emergency exception to *Payton*, there is an alternative ground on which its lawfulness must be sustained: consent"). Although it is certainly true that an undercover agent or a government informant receives consent when he is invited into a suspect's home, it is a fiction to claim that the subsequent officers who enter the suspect's home also receive the suspect's consent to enter. One court, however, appears to have espoused such a reliance upon consent, as it noted: When a suspect gives his consent to a government informant to enter his house, the suspect effectively gives consent to the agents with whom the government informant is working. *Akinsanya*, 53 F.3d at 856. Since the suspect controls who may enter his home absent a warrant or exigent circumstances, it cannot be claimed that a suspect, because he consented to the entry into his home by a government informant, also consents to the forced or surreptitious entry of the officers with whom the informant is working, since, in fact, no consent has been given to them. Moreover, simply because the government informant received consent to enter the suspect's home does not mean that the government informant himself thereby has authority to consent to the entry of the agents with whom he is working.

The doctrine, therefore, is not based upon either the exigent circumstances or the traditional consent exception to the warrant requirement.[2] Rather, it is based upon the theory that, because an undercover agent

---

[1] In fact, in *Pollard*, Judge Nathaniel Jones dissented from this Court's adoption of the "consent once removed" doctrine on the ground that it constituted an "unjustified extension of our traditional exigent circumstances jurisprudence." 215 F.3d 643, 649 (6th Cir. 2000).

[2] Although the doctrine is not based upon either the exigent circumstances or the traditional consent exception, one could characterize the conceptual foundation of the doctrine as based upon a combination of a sort of "quasi exigent circumstances and consent." For instance, in *Bramble*, the court concluded that the warrantless entry of the additional officers into the suspect's home did not violate the Fourth Amendment since the suspect had a diminished expectation of privacy as he had already invited

or informant who establishes probable cause to arrest the suspect may in fact arrest him then and there, he should be entitled to call in the agents with whom he is working to assist in the arrest[3] because, once the suspect invites the agent or informant into his house and displays his illegal activity to him, the suspect's Fourth Amendment expectation of privacy has been "fatally compromised." *Paul*, 808 F.2d at 648 ("The interest that the *Payton* decision protects is the interest in the privacy of the home, and [that interest] has been fatally compromised when the owner admits a confidential informant and proudly displays contraband to him. It makes no difference that the owner does not know he is dealing with an informant"). *See United States v. Bramble*, 103 F.3d 1475, 1478 (9th Cir. 1996) ("Once consent has been obtained from one with authority to give it, any expectation of privacy has been lost. We seriously doubt that the entry of additional officers would further diminish the consenter's expectation of privacy . . ."); *United States v. Janik*, 723 F.2d 537, 548 (7th Cir. 1983) (concluding that since the suspect had already invited an officer into his home, the warrantless entry of additional officers into the suspect's home constituted a trivial invasion of the suspect's privacy).

Thus, the doctrine is not made conceptually possible by law enforcement powers, as the dissent contends, such as the ability to seize incriminating evidence in plain view or the theory of collective knowledge.[4] Rather, the back-up officers entry into the suspect's home does not offend the Constitution because the suspect's expectation of privacy has been previously compromised. The only power that is traditionally viewed as a police power that is potentially necessary to support this doctrine is the arrest power, since, as the doctrine goes, once the invitee establishes probable cause to arrest, he may call for additional officers to *assist* him in effectuating the arrest. *See Pollard*, 215 F.3d at 548 (noting that once the undercover agent established probable cause to arrest the suspects, he could have arrested them if he had chosen to do so, but was entitled to rely upon back-up officers to assist him); *Paul*, 808 F.2d at 648 (noting that when one invites an undercover agent into his house, the agent can summon other agents to assist in the arrest). The arrest power, however, does not lie in the sole province of the police, but rather it has been granted to the citizens of many states. *See* 5 Am. Jur. 2d *Arrest* § 56; 133 A.L.R. 608. As is relevant in this case, Tennessee is one of those states that has granted the arrest power to its citizens.[5] Tenn. Code. Ann. § 40-7-109(a)(3) (2004) ("A private person may arrest another . . . [w]hen a felony has been committed, and the arresting person has reasonable cause to believe that the person arrested committed it). Since a citizen, just as an officer, may receive a suspect's consent to enter his home, determine if probable cause exists to arrest the suspect, and arrest him, then a citizen should be entitled to summon assistance in order to effectuate the arrest because the suspect's expectation of privacy is just as fatally compromised when he invites an informant into his house and displays his illegal activity to him as it is when he invites a government agent. *Paul*, 808 F.2d at 648 (noting that an owner's interest in the privacy of his home is fatally compromised when he "admits a confidential informant and proudly displays contraband to him" and that "[i]t makes no difference that the owner does not know he is dealing with an informant).

---

an undercover agent into his home (consent), and, in any event, the court continued, "any remaining expectation of privacy was outweighed by the legitimate concern for the safety of the officers inside" (exigent circumstances). 103 F.3d at 1478.

[3] Although police officers cannot create exigent circumstances to justify their entry into a suspects home, *see Williams*, 354 F.3d 497, 504 (6th Cir. 2003), if an undercover agent or informant in a suspect's home were to find herself to be in danger due to circumstances that she neither created nor which she could have readily averted, then the subsequent entry of officers to aid her would be supported by exigent circumstances.

[4] The ability of officers to seize evidence in plain view does not justify the entry of back-up officers into the suspect's home. Neither does the theory of collective knowledge justify it. The fact that we can impute the knowledge of the officer inside the suspect's home to the back-up officers does not entitle the back-up officers to enter. If these powers were the pillars upon which the doctrine rested, then *Pollard* would have been decided incorrectly.

[5] The dissents chastisement that we are "deputizing the lawless" evidences a misunderstanding as to the basis of the doctrine. Since the doctrine is not based on police powers, as explained in footnote 4, *supra*, no police powers are "entrusted" to the informants. If any police power were necessary to support this doctrine, it would be the arrest power, a power which has been granted to the citizens of Tennessee, including to those without a spotless past.

Having adopted the "consent-once-removed" doctrine with respect to an undercover agent calling upon police back-up to effect an arrest based upon probable cause disclosed to him in his undercover capacity, there is no justifiable distinction between the undercover officer's and an informant's ability to call upon the police to aid in the arrest. The consent in each instance is given without knowledge of the undercover status of the visitor.

_____

## DISSENT

_____

RONALD LEE GILMAN, Circuit Judge, dissenting. I agree with the majority that the language in *United States v. Pollard*, 215 F.3d 643, 648 (6th Cir. 2000), that applies the doctrine of consent once removed to an informant is dicta. In addition, I believe that the majority has properly recognized the Supreme Court's admonition that "[t]he Court has often heard, and steadfastly rejected, the invitation to carve out further exceptions to the warrant requirement for searches of the home." *Illinois v. Rodriguez*, 497 U.S. 177, 192 (1990). But the majority then proceeds to disregard this admonition in the case before us, compelling me to dissent. For the reasons set forth below, I would **REVERSE** the judgment of the district court, **VACATE** Yoon's sentence, and **REMAND** the case for further proceedings.

## I. ANALYSIS

### A.    Extension of the consent-once-removed doctrine to informants

As noted by the majority, the Seventh Circuit has extended the doctrine of consent once removed to civilian informants. *See United States v. Paul*, 808 F.2d 645, 648 (7th Cir. 1986) (holding that the doctrine of consent once removed "extends to the case where the initial, consensual entry is by a confidential informant"); *see also United States v. Diaz,* 814 F.2d 454, 459 (7th Cir. 1987) (noting that the doctrine applies "only where the agent (or informant) [who] entered at the express invitation of someone with authority to consent . . . established the existence of probable cause to effectuate an arrest or search, and immediately summoned help from other officers"). Subsequent Seventh Circuit cases have followed *Paul* and *Diaz*. *See United States v. Akinsanya*, 53 F.3d 852, 856 (7th Cir. 1995) (upholding the constitutionality of a warrantless search conducted by the police after an informant had been given consent to enter); *United States v. Jachimko*, 19 F.3d 296, 299 (7th Cir. 1994) (holding that the district court erred in failing to apply the rule announced in *Paul* and *Diaz* to a warrantless search based upon a signal from an informant granted access to the residence).

Several other courts, both federal and state, have adopted the doctrine of consent once removed, but almost all of these cases, like our own case of *Pollard*, have actually applied the doctrine only to police officers rather than to informants. *See, e.g.*, *United States v. Bramble*, 103 F.3d 1475, 1478-79 (9th Cir. 1996) (adopting the doctrine of consent once removed to determine the constitutionality of a search based on consent given to an undercover police officer); *State v. Henry*, 627 A.2d 125, 130-131 (N.J. 1993) (upholding the constitutionality of an arrest effected after an undercover police officer gained consent to enter and then briefly exited the apartment to summon backup help). Although most of these cases contain dicta similar to that in *Pollard*, I have found only one outside of the Seventh Circuit that has applied the concept to an informant. *See Baith v. State*, 598 A.2d 762, 766-68 (Md. 1991) (upholding the constitutionality of a search based on consent given to an informant, but not explicitly discussing the doctrine of consent once removed). Because I find the reasoning of such cases unpersuasive and contrary to Supreme Court jurisprudence regarding warrantless searches and seizures, I would have the Sixth Circuit reject this extension of the consent-once-removed doctrine.

### B.    The majority's severance of probable cause from the warrant requirement is unjustified

As stated by the majority, the informant's signal to the police "established the necessary probable cause to effectuate an arrest." Maj. Op. at 5. The opinion fails to note, however, that, in the absence of exigent circumstances, the existence of probable cause simply *entitles the police to obtain a warrant* to enter a home, not to charge inside without a warrant. *See Illinois v. Rodriguez*, 497 U.S. 177, 181 (1980) ("The Fourth Amendment generally prohibits the warrantless entry of a person's home, whether to make an arrest or to search for specific objects."). Indeed, if this were not the law, there would be no need for the warrant

requirement at all—police officers could simply invade homes whenever they deemed that probable cause existed, without the intervention of a neutral magistrate. Such a severance of probable cause from the warrant requirement is completely unjustified.

**C.      Expanding the doctrine of consent once removed to informants ignores the conceptual basis of the doctrine and improperly gives police powers to suspect informants**

The doctrine of consent once removed is made conceptually possible by law-enforcement powers that have been granted to the police, but never to civilians. These powers consist of (1) the ability of police officers to lawfully seize incriminating evidence in plain view, and (2) the theory of collective knowledge, under which the knowledge of one law enforcement officer can be imputed to another if the other is working on the same investigation. The Supreme Court's enunciation of the "plain-view doctrine" explicitly assumes that the evidence is in the plain view of police officers. *See Horton v. California*, 496 U.S. 128, 136-37 (1990) ("It is . . . an essential predicate to any valid warrantless seizure of incriminating evidence that *the officer* did not violate the Fourth Amendment in arriving at the place from which the evidence could be plainly viewed.") (emphasis added).

Likewise, courts have imputed collective knowledge about criminal investigations to law enforcement officials, not to the general public. *See Collins v. Nagle*, 892 F.2d 489, 495 (6th Cir. 1989) (noting that "[m]any circuits, including our own, have determined that probable cause may be established from the collective knowledge *of the police* rather than solely from the *officer* who actually made the arrest") (emphasis added); *see also United States v. Woods*, 544 F.2d 242, 260 (6th Cir. 1976) (describing the collective knowledge theory as imputing mutual knowledge to "a group of agents in close communication with one another [who] determine[] that it is proper to arrest an individual. . . .").

Indeed, this circuit has made an explicit distinction between imputing the knowledge of law enforcement officials to each other and imputing the knowledge of an informant to law enforcement officials: "The danger of [a law enforcement official's] having falsified his information is simply not as great as with an unnamed criminal informer who may be seeking favorable treatment from the government or revenge against the suspect." *United States v. Calandrella*, 605 F.2d 236, 246 (6th Cir. 1979) (imputing knowledge of an SEC official about suspicious securities transactions to other law enforcement officials).

I have no problem with the proposition that a suspect who voluntarily consents to the entry of a law enforcement officer waives the right to insist on a search warrant. Nor do I question the wisdom of the consent-once-removed doctrine that imputes collective knowledge among law enforcement officers. What gives me grave concern is the extension of the doctrine to lay informants, because the extension entrusts to ordinary civilians law-enforcement powers previously given only to the police.

Furthermore, these powers are entrusted to a suspect class of civilians—informants who themselves often have criminal charges pending and therefore have every reason to curry favor with the police in the hope of receiving lenient treatment for their own wrongdoing. Thus, by not recognizing the conceptual basis for the consent-once-removed doctrine, the majority effectively deputizes the very criminals from whom law enforcement officials should be protecting law-abiding citizens.

**D.      As Yoon's case illustrates, an expansion of the consent-once-removed doctrine is unnecessary**

The Supreme Court has vigorously affirmed the importance of the warrant requirement and has long since warned against attempts to undercut it. In addition to *Illinois v. Rodriguez*, 497 U.S. 177, 192 (1990), see *Johnson v. United States*, 333 U.S. 10, 15 (1948), in which the Court held that "the inconvenience to the officers and . . . slight delay necessary to prepare papers and present the evidence to a magistrate" is not a sufficient reason to abrogate the warrant requirement. As the facts of Yoon's case well illustrate, the majority's invitation for the police to avoid the inconvenience of the warrant requirement by having informants obtain consent to enter homes is entirely unnecessary.

Here, for example, there was no justifiable reason for the police not to seek a warrant before entering Yoon's apartment. "[T]here can be no claim that immediate police action was needed to prevent the destruction of vital evidence or thwart the escape of known criminals." *United States v. Morgan*, 743 F.2d 1158, 1163 (6th Cir. 1984) (holding that the warrantless entry and search of the defendant's home was illegal because, "[a]bsent exigent circumstances, police officers may not enter an individual's home or lodging to effect a warrantless arrest or search"); *see also United States v. Killebrew*, 560 F.2d 729, 734 (6th Cir. 1977) (holding that a warrantless entry could not be justified on the ground that the suspect might escape, where he "was not known to be dangerous and no grave offense or crime of violence was threatened or indicated").

The only exigent circumstances in this case were created by the police themselves. According to the testimony of TBI Officer Margie Williams, the police did not give Kim enough money to complete the drug deal, and concern for Kim's safety was one reason for the raid. But, as noted in *Morgan*, "[p]olice officials . . . are not free to create exigent circumstances to justify their warrantless intrusions." 743 F.2d at 1163. What the police gained from this entry—and what the majority holds to be of greater importance than the warrant requirement—was thus nothing more than the avoidance of "the inconvenience to the officers," *Johnson*, 333 U.S. at 15, in obtaining a warrant.

**E.      Citizens' power of arrest**

The majority also points out that a Tennessee citizen can legally arrest another whom he or she has reasonable cause to believe has committed a felony. *See* T.C.A. § 40-7-109(a) (2004) ("A private person may arrest another . . . [w]hen a felony has been committed, and the arresting person has reasonable cause to believe that the person arrested committed it."). From this premise, however, the majority makes the unwarranted assertion that a private citizen who witnesses a felony in a person's home can give the police permission to burst into the home without a warrant in order to assist in the arrest. Maj. Op. at 7, n.2. No authority is cited in support of this novel proposition other than this court's dicta in *Pollard*. *Id.*

The majority's assertion ignores the difference between the restrictions that the Fourth Amendment places on state actors, such as police officers, and the restrictions it places on private citizens. Even if a private citizen in Kim's position could enter Yoon's home and arrest him, the consent given to that private citizen would not permit the police to engage in a warrantless arrest inside the home absent exigent circumstances or consent specifically given to a police officer. *See, e.g., Coolidge v. New Hampshire*, 403 U.S. 443, 474 (1971) (holding that "a search or *seizure* carried out on a suspect's premises without a warrant is per se unreasonable, unless the *police* can show that it falls within one of a carefully defined set of exceptions based on the presence of exigent circumstances") (emphasis added).

**F.      Sentencing issues**

Because I would reverse Yoon's conviction, I would also vacate his sentence. *See United States v. Jenkins*, 345 F.3d 928 (6th Cir. 2003) ("Because we reverse [the defendant's] conviction, we need not address her argument that the district court erred in denying her a two-level reduction . . . or her argument that the district court erred in failing to sentence her pursuant to [the Guidelines'] safety-valve provisions.") Yoon's argument that his sentence is unconstitutional under *Blakely v. Washington*, 542 U.S. __, 124 S. Ct. 2531, 2536-37 (2004), is similarly moot in my view.

**II.  CONCLUSION**

In sum, I believe that the majority's decision to expand the doctrine of consent once removed to informants seriously chips away at the Fourth Amendment's prohibition against warrantless searches and seizures. By severing probable cause from the warrant requirement and deputizing the lawless, the majority invites police officers to evade the warrant requirement for reasons no more pressing than mere convenience. This is directly contrary to the Supreme Court's admonition in *Coolidge* that a seizure carried out on a suspect's premises without a warrant is per se unreasonable in the absence of exigent

circumstances.  I therefore respectfully dissent.