NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 06a0128n.06
Filed: February 16, 2006

No. 04-4069

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| **Plaintiff-Appellee,** | ) | **ON APPEAL** FROM THE |
| | ) | UNITED STATES DISTRICT |
| v. | ) | COURT FOR THE NORTHERN |
| | ) | DISTRICT OF OHIO |
| GERALD A. WEST, | ) | |
| | ) | **O P I N I O N** |
| **Defendant-Appellant.** | ) | |

BEFORE: MARTIN, NORRIS, and DAUGHTREY, Circuit Judges.

**PER CURIAM.** Defendant Gerald A. West appeals his conviction, after a jury trial, for armed bank robbery in violation of 18 U.S.C. § 2113(a) and (d). On appeal, he argues that the district court erred in denying his motion to suppress a police videotape excerpt containing admissions he made during the booking process. Specifically, he objects to the fact that the excerpt, which was played at trial, included incriminating responses to questions the police asked him after he had invoked his Fifth Amendment right to remain silent. Because any constitutional error in admitting the tape was harmless in light of the overwhelming independent evidence of guilt, we affirm the judgment of the district court.

**I.**

On August 1, 2003, defendant robbed the First Merit Bank in Macedonia, Ohio at gun point, and fled with a money bag containing $32,684.79. The bank teller had placed a "die pack" in the

bag, as well as "bait money" with prerecorded serial numbers. A customer directed the police to the woods adjacent to the bank. After defendant emerged onto the road beyond the woods in an automobile, a high speed chase followed, which was recorded on videotape. Defendant eventually turned into a gravelled area, crashed into some trees, and ran across a grassy field into the woods. The police found money scattered in the field as well as more money, gloves, and a ski mask in the abandoned vehicle. They arrested defendant at the far end of the woods. A bag of money stained with red dye was next to him. Subsequently, the police searched the woods next to the bank, and found another bag with money covered in red dye along with a toy pistol.

The police read defendant his *Miranda* rights upon arrest and again at the police station before he was booked. *See Miranda v. Arizona*, 384 U.S. 436 (1966). Defendant did not respond the first time but stated, following the second warning, "I know my rights." All of the events that transpired in the booking room were recorded on videotape. The entire videotape was one hour and seven minutes long, but only a ten minute excerpt was played to the jury during the trial. The jury was also supplied with a written transcript of the excerpt.

In the booking room, police officer Steven Van Ness asked defendant routine booking questions as well as questions concerning the crime. The videotape excerpt begins with defendant's statements that the police would not find a gun because "I did not pull out no gun," that "I had my hands in the pockets," and that "I had gloves on." When officer Van Ness announced that "there are going to be people coming to talk to you," defendant responded, "I'm really not going to say nothing else." Nevertheless, Van Ness continued to question defendant about the crime. Defendant said that he got lost running in the woods on the way to his car, that he finally ended the chase

because it was dangerous, that he intended to just get the money and run, and that perhaps he ought to have made a sudden move against the officer that arrested him.

On August 12, 2003, defendant was indicted for armed bank robbery. The district court denied defendant's motion to suppress the videotape excerpt after conducting a hearing. The trial began on November 3, 2003. Defendant elected to represent himself. His defense was that he had been accompanying a man named "Mo Williams," that "Mo" disappeared for five or ten minutes for unknown reasons before compelling defendant at gun point to drive away, and that the police had framed him.

In declining to suppress the videotape excerpt, the district court reasoned that defendant had already stated the "essence" of the disputed information prior to expressing his desire to not say anything more. In addition, it found that defendant "did not clearly manifest his desire that the questions should cease," given that he was an adult with experience of the criminal justice system.

**II.**

When reviewing the district court's denial of a motion to suppress evidence, this court reviews the factual findings for clear error and the legal conclusions *de novo*. *United States v. McClain*, 430 F.3d 299, 304 (6th Cir. 2005) (citing *United States v. Yoon*, 398 F.3d 802, 805 (6th Cir. 2005)). Defendant contends that the district court should have suppressed the videotape excerpt because the police violated the following bright line rule:

> [I]f the individual is alone and indicates in any manner that he does not wish to be interrogated, the police may not question him. The mere fact that he may have answered some questions or volunteered some statements on his own does not deprive him of the right to refrain from answering any further inquiries until he has consulted with an attorney and thereafter consents to be questioned.

*Miranda*, 384 U.S. at 445; *see also Michigan v. Mosley*, 423 U.S. 96, 100-01 (1975).

In *Kordenbrock v. Scroggy*, 919 F.2d 1091 (6th Cir. 1990) (en banc), this court concluded that, although the defendant had admitted to shooting two men before refusing to talk further, his subsequent admissions damaged his defense regarding his intent. *Id.* at 1097-1100. We thus proceeded to a harmless error analysis under *Chapman v. California*, 386 U.S. 18 (1967). *Kordenbrock* at 1099. *Chapman* requires the "beneficiary of a constitutional error to prove beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained." *Chapman,* 384 U.S. at 24. Although we reversed in *Kordenbrock* because defendant's subsequent admissions were the only evidence of premeditation, *id.* at 1099-1100, in this case, assuming *arguendo* that his defense was not entirely undetermined by defendant's statements prior to his invocation of his *Miranda* rights, the admission of the videotape excerpt was harmless because the independent evidence against him was overwhelming. Not only was defendant caught "red-handed," his defense that "Mo did it" and that the police had fabricated the evidence was unbelievable. Accordingly, we decline to reverse defendant's conviction.

**III.**

The judgment is **affirmed.**