**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Abayomi AKINSANYA, Defendant–Appellant.**

No. 94–2655.

United States Court of Appeals, Seventh Circuit.

Argued Jan. 4, 1995.

Decided May 9, 1995.

**854**

Brian W. Blanchard (argued), Office of U.S. Atty., Crim. Div., Barry Rand Elden, Asst. U.S. Atty., Crim. Receiving, Appellate Div., Chicago, IL, for U.S.

David B. Atkins, Chicago, IL (argued), for Abayomi Akinsanya.

Before POSNER, Chief Judge, CUDAHY, Circuit Judge, and GRANT, District Judge.[*]

GRANT, District Judge.

Abayomi Akinsanya was arrested in his Chicago apartment on April 23, 1992 after producing approximately 100 grams of heroin for purchase by a government informant. He was subsequently charged with possession with intent to distribute in violation of 21 U.S.C. § 841(a)(1). Unpersuaded by his entrapment defense, the jury found Akinsanya guilty as charged. On appeal, Akinsanya challenges: (1) the district court's denial of his motion to suppress the evidence obtained in the warrantless search of his apartment (the 100 grams of heroin); (2) the district court's refusal to give his tendered jury instruction emphasizing the value of character evidence; (3) the sufficiency of the evidence of predisposition; (4) the prosecutor's closing remarks; and (5) the cumulative effect of these errors on his right to a fair trial. For the following reasons, the judgment is AF-FIRMED.

[*] The Honorable Robert A Grant of the United States District Court for the Northern District of Indiana is sitting by designation.

## I. FACTUAL BACKGROUND

Pursuant to an agreement with the government, Saeed Gilani, an admitted drug dealer, was "cooperating" with authorities in the investigation of drug trafficking in the Chicago area. In an effort to fulfill his obligations under the agreement, Gilani tried to reestablish contact with a former business associate, the defendant Abayomi Akinsanya, whom he contended was a drug dealer known to sell heroin in amounts up to one kilogram.

Gilani contacted Akinsanya in early April 1992 to see if he could purchase 100–200 grams of heroin. Although his initial efforts were unsuccessful, in a taped phone conversation which occurred on April 17, 1992, Akinsanya agreed in coded language to sell Gilani "four wheels" of heroin (with one "wheel" equal to 25 grams) at a cost of $5,500 per "wheel". Gilani told Akinsanya that he wanted to contact his buyer and that he would call back.

Three or four days later, Gilani called Akinsanya and said that he needed a sample to show his buyer. Akinsanya agreed, and told Gilani he could pick it up at his place of business, a flower shop on the north side of Chicago. When Gilani arrived at the shop, Akinsanya gave him a small sample of heroin and told Gilani the price would be $18,500 for each 100 grams. Gilani left, but purportedly lost the sample before he could turn it over to the authorities.

After a series of telephone conversations on April 23, 1992, Gilani and Akinsanya agreed to meet at the defendant's apartment later that night to culminate the 100 gram transaction. The defendant met Gilani in the lobby of the apartment building, and asked if the buyer was ready with the money. Gilani indicated that he was, and told Akinsanya that his buyer was looking for a parking space and was waiting for him to call him on his car phone. Gilani left the building, went to a nearby pay phone and called DEA Agent Fergus to tell him that Akinsanya wanted to see the money. Agent Fergus informed Gilani that he (Gilani) would have to see the

heroin before they could reveal any money to the defendant. Gilani rejoined Akinsanya in the lobby, and the two walked into the indoor parking garage where the defendant retrieved "the stuff" from his car. They then went up to Akinsanya's apartment. DEA agents followed close behind, and took up positions in the hallway.

Inside the apartment, Akinsanya showed Gilani what appeared to be 100 grams of heroin. Gilani called one of the agents, under the pretext that the agent was his buyer, and told him that he had seen the heroin. The agent instructed Gilani to wait briefly, and then leave the apartment. DEA agents waiting outside of Akinsanya's apartment were alerted via radio that Akinsanya had the heroin and that Gilani would be leaving shortly, purportedly to get the money for the heroin. A few minutes later, Gilani opened the door and stepped from the apartment, at which point one of the agents identified himself as a police officer, displayed his badge, and stepped into the apartment. A struggle ensued, and when the defendant was finally restrained, agents searched the apartment and found a plastic bag containing approximately 100 grams of heroin sitting on top of the toilet in the bathroom. Gilani later testified that Akinsanya told him he kept it there for easy disposal in the event of emergencies.

At trial, Akinsanya raised an entrapment defense, contending that he only agreed to the transaction after "repeated and strenuous hounding by Gilani." Akinsanya testified that between 1990 and March 1992, Gilani mentioned illegal drugs to him approximately ten times, and asked him to join him in dealing drugs. According to Akinsanya, he told Gilani that he was not interested. Akinsanya did acknowledge, however, that in raising the topic of drug dealing, Gilani did not push or pressure him, nor did he pursue the issue at length. When Akinsanya expressed no interest, Gilani "would just laugh and drop the subject." Akinsanya testified that a few weeks before his arrest, Gilani came to him and told him he wanted Akinsanya to find heroin for a friend of his. Akinsanya allegedly asked Gilani where heroin came from, and Gilani told him that people from Akinsanya's native country (Nigeria) bring it

into the United States. Although Akinsanya expressed no interest in helping Gilani at that time, Gilani brought the subject up at least five times in the week prior to his arrest, encouraging Akinsanya by telling him how much money they could make. Akinsanya ultimately conceded and told Gilani that he would see if he could find the heroin. Akinsanya testified that a day later, on April 18, 1992, he happened to be at a party (although he couldn't remember whose) and to run into a man he knew "slightly" named "Benny," and that Benny happened to mention to him that he had 100 grams of heroin that he needed to sell. According to Akinsanya, Benny took him aside and told him that he had a package of heroin that he wanted to leave with him, and that he knew Akinsanya was a trustworthy businessman, who would be good for the money. Benny therefore agreed to front the heroin with the understanding that Akinsanya could pay him when he saw him next. Akinsanya testified that he agreed to this transaction because Gilani had done him favors in the past, and because he wanted "to get [Gilani] off [his] back." The favors to which he referred included: helping Akinsanya get started in the car wholesaling business by allowing him to use his (Gilani's) dealer's license, and doing some auto repair work for free.

## II. DISCUSSION

### A. The Motion to Suppress

Akinsanya raises a Fourth Amendment challenge to the DEA's warrantless entry and search of his apartment, contending that the district court erred in applying the "consent once removed" doctrine as a basis for denying his motion to suppress the fruits of that search (the heroin). While he concedes that the Seventh Circuit has repeatedly recognized the validity of the consent once removed doctrine, he argues that there should be limits. He contends that where, as here, there were no "emergency circumstances", authorities should be required to obtain a warrant. Akinsanya also contends that any consent which he may have extended to Gilani to enter his home expired when Gilani left the apartment, and that the officers therefore entered without consent. His argu-

ments, unfortunately, find no support in the law.

Under *Payton v. New York*, 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980), DEA agents could not have entered Akinsanya's apartment without a warrant, even if they had probable cause, *unless the entry was consented to, or there were "exigent circumstances"*. *United States v. Diaz*, 814 F.2d 454, 458 (7th Cir.), *cert. denied*, 484 U.S. 857, 108 S.Ct. 166, 98 L.Ed.2d 120 (1987). The government maintained that both existed when it argued its case before the district court. While the district court indicated a reluctance to rely on the emergency exception to *Payton*,[1] it found that Akinsanya had indeed given his consent to the entry and search when he admitted Gilani, a government informant, into the apartment and displayed the heroin, and that the warrantless entry and search of the premises was therefore lawful under the "consent once removed" doctrine as extended by *United States v. Paul*, 808 F.2d 645, 648 (7th Cir. 1986). We agree.

 The doctrine of "consent once removed" is applicable where the undercover agent or government informant: (1) entered at the express invitation of someone with authority to consent; (2) at that point established the existence of probable cause to effectuate an arrest or search; and (3) immediately summoned help from other officers. *United States v. Jachimko*, 19 F.3d 296, 299 (7th Cir.1994); *Diaz*, 814 F.2d at 459; *Paul*, 808 F.2d at 648. All three criteria were established in the present case. Akinsanya consented to Gilani's entry into the apartment; Gilani saw the heroin (thus establishing probable cause); and Gilani immediately summoned the agents, who entered the apartment just as Gilani was leaving. When Akinsanya gave his consent to Gilani to enter his apartment, he effectively gave consent to the agents with whom Gilani was working. *Jachimko*, 19 F.3d at 298–99; *Paul*, 808 F.2d at 648. That consent was not withdrawn simply because Gilani stepped out of the

apartment moments before, or at the same time, the agents entered. *Diaz*, 814 F.2d at 459. As we noted in *United States v. Janik*, 723 F.2d 537, 548 (7th Cir.1983), valid consent, once given, is "a substitute for a warrant."

## B. The Character Evidence Instruction

At trial, defense called several witnesses to testify to the defendant's character. All expressed an opinion that Akinsanya was honest and truthful; that he had a reputation for being law-abiding; and that he did not have a reputation for being a drug dealer. The obvious strategy was to convince the jury that such a fine man would not have been "predisposed" to sell heroin. Counsel emphasized the defendant's character throughout the proceedings, and tendered jury instructions which would have done the same. The instructions tendered by the defendant were patterned after Seventh Circuit Pattern 3.15, and included reference to the fact that, "Character evidence alone may create a reasonable doubt of the defendant's guilt." The court refused to give the instruction, and instead instructed the jury as follows:

> The defendant has introduced evidence of his character. More specifically, the defendant has introduced reputation and/or opinion evidence about his truthfulness, honesty and law-abidingness. You should consider character evidence with and in the same manner as all the other evidence in the case.

The defendant argues on appeal that the district court's actions constitute reversible error. We disagree.

 The trial court's decision not to give a tendered jury instruction will provide grounds for reversal only if the defendant can satisfy the following criteria:

> (1) the instruction represents an accurate statement of the law; (2) the instruction reflects a theory [of defense] that is supported by the evidence; (3) the instruction

---

1. The district court's reluctance was based, at least in part, on its belief that the agents had sufficient evidence and opportunity to obtain a warrant for Akinsanya's arrest before they entered his apartment. The government wisely

chose not to pursue its exigent circumstances argument on appeal, for we are in complete agreement with the district court. Exigent circumstances did not exist in the present case.

reflects a theory which is not already part of the charge; and (4) the failure to include the instruction would deny the [defendant] a fair trial.

*United States v. Edwards,* 36 F.3d 639, 645 (7th Cir.1994). Reversal is appropriate only if the defendant can satisfy all four criteria. Akinsanya has failed to meet that burden.

■ The pattern jury instruction which the district court gave was an accurate statement of the law regarding the weight to be accorded character evidence. There was no need to duplicate the charge to the jury or emphasize the importance of one type of evidence over another. *Edwards,* 36 F.3d at 645 (instructions which are accurate statements of the law and which are supported by the record will not be disturbed on appeal). The law is clear in this Circuit, the "standing alone" instruction "even if allowable" is "never necessary." *United States v. Harrington,* 919 F.2d 449, 450 (7th Cir.1990). See also *United States v. Burke,* 781 F.2d 1234, 1238 (7th Cir.1985) (district court properly refused defense request to instruct the jury that "character evidence alone may create a reasonable doubt of the defendant's guilt," reasoning that it would have been "particularly inappropriate" to give the "standing alone" instruction because the defendant had testified at trial).

### C. Prosecutorial Misconduct in Closing Arguments

■ In his closing argument, the prosecutor told the jury that the mere fact that Akinsanya had no prior criminal convictions or arrests for drug-related offenses "doesn't mean [he] never dealt drugs before." Akinsanya contends that the comment was totally unsupported by the evidence, misled the jury, shifted the burden of proof, and fatally prejudiced his case.

"We give considerable deference to the district court to supervise the arguments of counsel, and it is rare that improper comments made during closing argument rise to the level of reversible error." *Marshall v. Porter County Plan Commission,* 32 F.3d 1215, 1221 (7th Cir.1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 1111, 130 L.Ed.2d 1076 (1995). We must first look at the remark in isolation to determine whether it was proper. *United States v. Badger,* 983 F.2d 1443, 1450 (7th Cir.), *cert. denied,* —— U.S. ——, 113 S.Ct. 2391, 124 L.Ed.2d 293 (1993). If it was, our analysis of the defendant's due process claim ends. If it was not, we must "look at the remark[ ] in light of the entire record," *Badger,* 983 F.2d at 1450, and determine whether the prosecutor's comment "so infected the trial with unfairness as to make the resulting conviction a denial of due process." [2] *Darden v. Wainwright,* 477 U.S. 168, 181, 106 S.Ct. 2464, 2471, 91 L.Ed.2d 144 (1986) (quoting *Donnelly v. DeChristoforo,* 416 U.S. 637, 643, 94 S.Ct. 1868, 1871, 40 L.Ed.2d 431 (1974)). The district court found that the prosecutor's remark in this case was not improper and overruled the defendant's objection. We agree with that disposition.

It was a single statement made in response to defense counsel's emphasis on Akinsanya's "good character," and his attempt to disprove predisposition by showing that Akinsanya had no prior drug convictions or arrests. The inference which the prosecutor wished the jury to draw from the evidence was not unreasonable. Akinsanya's knowledge of the "code" language used in drug deals and his ability to quickly acquire 100 grams of heroin strongly suggest that Akinsanya was not a newcomer to drug dealing, as he professed, but rather an experienced drug dealer. The prosecutor's comment therefore was not a

---

**2.** Factors considered in determining whether the prosecutor's remarks effectively deprived the defendant of a fair trial include:

1) the nature and seriousness of the prosecutorial misconduct, 2) whether the prosecutor's statements were invited by conduct of defense counsel, 3) whether the trial court instructions to the jury were adequate, 4) whether the defense was able to counter the improper arguments through rebuttal, and 5) the weight of the evidence against the defendant.

*United States v. Osuorji,* 32 F.3d 1186, 1191 (7th Cir.1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 919, 130 L.Ed.2d 799 (1995) (quoting *United States v. Pirovolos,* 844 F.2d 415, 426 (7th Cir.), *cert. denied,* 488 U.S. 857, 109 S.Ct. 147, 102 L.Ed.2d 119 (1988)). Each of these factors weighs in favor of affirming the conviction.

total departure from the evidence, as Akinsanya suggests, and was proper.

Even if we were to assume for the sake of argument that the remark was improper, Akinsanya has failed to demonstrate that the comment "influenced the jury in such a way that substantial prejudice resulted." *Fenolio v. Smith*, 802 F.2d 256, 258 (7th Cir.1986). Defense counsel had adequate opportunity to rebut the prosecutor's statement, and availed himself of that opportunity by repeatedly emphasizing the fact that Akinsanya had no prior drug convictions or arrests. The jury had ample opportunity to hear from both the government and the defendant, and found the defendant's testimony to lack credibility. Any potential prejudice which may have resulted from the prosecutor's comment was sufficiently minimized by the district court when it cautioned the jury during final instructions that closing arguments by the attorneys are not evidence. See *United States v. Gonzales*, 933 F.2d 417, 431 (7th Cir.1991). Under the circumstances, Akinsanya's due process challenge must fail.

### D. Sufficiency of the Evidence of Predisposition

Akinsanya's challenge to the sufficiency of the evidence is similarly without merit. "[A] verdict will withstand a sufficiency of the evidence challenge unless there is no evidence from which the jury can find guilt beyond a reasonable doubt." *United States v. Tilmon*, 19 F.3d 1221, 1229 (7th Cir.1994). We review the evidence in the light most favorable to the government, and will not reweigh the evidence or reassess the credibility of the witnesses. *Tilmon*, 19 F.3d at 1229; *United States v. Caudill*, 915 F.2d 294, 297 (7th Cir.1990).

■ "Where the government has induced an individual to break the law and the defense of entrapment is at issue ... the prosecution must prove beyond a reasonable doubt that the defendant was disposed to commit the criminal act prior to first being approached by government agents." *Jacobson v. United States*, 503 U.S. 540, 548–49, 112 S.Ct. 1535, 1540, 118 L.Ed.2d 174 (1992). This standard creates two issues for the jury: (1) did the government induce the defendant

to commit a crime; and (2) was there a lack of predisposition on the part of the defendant to engage in the criminal conduct. See *United States v. Hollingsworth*, 27 F.3d 1196, 1200–01 (7th Cir.1994) (*en banc*). The two elements are inversely related. "[T]he greater the inducement, the weaker the inference that in yielding to it the defendant demonstrated that he was predisposed to commit the crime in question." *Hollingsworth*, 27 F.3d at 1200. Where the defendant was "simply provided with the opportunity to commit a crime, the entrapment defense is of little use because *the ready commission of the criminal act* amply demonstrates the defendant's predisposition." *Jacobson*, 503 U.S. at 550, 112 S.Ct. at 1541. Such is the case before us.

■ Akinsanya contends that he "lacked the basic knowledge, instincts, and tools that would allow him to survive as a drug dealer," and that absent the "repeated and intense pressure" placed upon him by Gilani, he would not have committed the crime. While it is true that Gilani persisted in his efforts to buy heroin from Akinsanya after initial attempts failed, persistence "is not alone sufficient to carry the case beyond an ordinary opportunity." *United States v. Santiago–Godinez*, 12 F.3d 722, 729 (7th Cir.1993), *cert. denied*, — U.S. —, 114 S.Ct. 1630, 128 L.Ed.2d 354 (1994). There is no evidence in the record that Gilani employed any "pressure tactics" or used any other type of coercion to induce Akinsanya to commit the crime. Indeed, the only inducement which Akinsanya appears to have been offered was the ordinary profits of heroin trafficking. The ease with which Akinsanya acquired the heroin only serves to enhance the government's case. For someone who purportedly lacked "the basic knowledge, instincts and tools of the trade", Akinsanya was able to acquire a significant amount of heroin (100 grams) in very little time. Under the circumstances, a jury would be hard-pressed to find that Akinsanya was not predisposed to commit the crime with which he was charged.

### E. Cumulative Effect of the Errors

Akinsanya attempts to persuade us in a last ditch effort that the cumulative effect of

the errors which he has asserted warrant reversal even if no single error would. To have any hope of success, however, he would have had to prevail on at least one of his challenges. He did not.

### III. CONCLUSION

For the foregoing reasons, the judgment is AFFIRMED.