# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

### *People v. Krinitsky*, 2012 IL App (1st) 120016

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, v. NEIL KRINITSKY, Defendant-Appellee. |
| District & No. | First District, Second Division<br>Docket No. 1-12-0016 |
| Filed | December 11, 2012 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | The trial court properly granted defendant's motion to quash his arrest and suppress evidence of his possession of cannabis, notwithstanding the State's contentions that he forfeited his rights when he invited an informant into his apartment for a drug transaction and that the entry by police was justified under the "consent once removed" doctrine, since the State waived the forfeiture argument by failing to raise it before the trial court and the "consent once removed" doctrine did not apply to the facts presented. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No.11-CR-5148; the Hon. Carol M. Howard, Judge, presiding. |
| Judgment | Affirmed. |

Counsel on Appeal

Anita M. Alvarez, State's Attorney, of Chicago (Alan J. Spellberg, Michelle Katz, and Tasha-Marie Kelly, Assistant State's Attorneys, of counsel), for the People.

Michael J. Pelletier, Alan D. Goldberg, and Christofer R. Bendik, all of State Appellate Defender's Office, of Chicago, for appellee.

Panel

PRESIDING JUSTICE HARRIS delivered the judgment of the court, with opinion.

Justices Connors and Simon concurred in the judgment and opinion.

## OPINION

¶ 1    The State charged defendant, Neil Krinitsky, with possession of more than 5,000 grams of cannabis with intent to deliver; possession of more than 500 grams, but less than 2,000 grams of cannabis with intent to deliver; possession of less than 50 grams of methylenedioxymethamphetamine (MDMA) with intent to deliver and possession of hydrocodone with intent to deliver. Defendant filed a motion to dismiss, quash his arrest, and suppress evidence, which the circuit court granted. The circuit court denied the State's subsequent motion for reconsideration. At issue is whether the circuit court properly granted defendant's motion to dismiss, quash his arrest, and suppress evidence. We hold that the State has not met its burden of proving that exigent circumstances existed to justify the entry into defendant's apartment. Therefore, the circuit court did not err in granting defendant's motion to dismiss, quash his arrest, and suppress evidence. We hold the State has waived its initial argument on appeal for failing to first raise it in the circuit court. Additionally, we hold the State has not shown it has satisfied the elements of the "consent once removed" doctrine. We note that we express no opinion on whether the doctrine should be adopted by this court, just that it does not apply to the specific factual situation at issue here.

¶ 2                              JURISDICTION

¶ 3    On October 31, 2011, the circuit court granted defendant's motion to quash his arrest and suppress evidence. On December 13, 2011, the circuit court denied the State's motion to reconsider. On December 28, 2011, the State filed a certificate of substantial impairment and appealed the circuit court's ruling. Accordingly, this court has jurisdiction pursuant to Illinois Supreme Court Rule 604. Ill. S. Ct. R. 604 (eff. July 1, 2006); see also *People v. Drum*, 194 Ill. 2d 485 (2000).

¶ 4                              BACKGROUND

¶ 5    The State charged defendant with possession of more than 5,000 grams of cannabis with

intent to deliver; possession of more than 500 grams but less than 2,000 grams of cannabis with intent to deliver; possession of less than 50 grams of MDMA with intent to deliver; and possession of hydrocodone with intent to deliver.

¶ 6        Defendant filed a motion to dismiss, quash his arrest, and suppress evidence based on the exclusionary rule enunciated in *Mapp v. Ohio*, 367 U.S. 643 (1961), and the fourth amendment right to be secure from unreasonable search and seizures. In his motion, defendant alleged that prior to his March 9, 2011, arrest, the Illinois State Police were working with a "cooperating subject." He alleged that "while working with and at the direction of the Illinois State Police, the cooperating subject retrieved 15 pounds of a substance containing cannabis from his vehicle." The Illinois State Police then directed the cooperating subject to contact defendant in order to sell defendant the cannabis. Defendant alleged the cooperating subject entered his residence, "stayed inside the residence for a period of time and left." Shortly after the cooperating subject's exit, "multiple law enforcement officers who were standing by [ ] entered" his residence without either a warrant or defendant's consent. Defendant further alleged that "no exigent circumstances existed that necessitated forced entry into [his] residence without a search or arrest warrant" and that the police "had enough time to properly secure a search warrant *** without fear that such [a] large amount of cannabis would be removed." Defendant alleged the entry into his residence was illegal and, therefore, any evidence or contraband should have been suppressed, and his arrest quashed. He requested the circuit court quash his arrest, dismiss the complaints against him, suppress any evidence from his search and arrest, and bar the State "from any direct or derivative use of the suppressed evidence."

¶ 7        At the hearing on the matter, defendant called Special Agent Lloyd Graham of the Illinois State Police and Max Koch, defendant's roommate at the time of the incident, to testify. Officer Graham testified he is employed as a special agent for the Illinois State Police as a narcotics agent. At approximately 10:30 a.m. on March 9, 2011, he received a call from "TASC force Officer Fuchi" about a person named "Tardona" who was on his way to Chicago. Tardona had been caught in Iowa with a large amount of cannabis during a traffic arrest. Tardona was delivering the cannabis to an address in Chicago. Roughly 11 hours later, at either 9:30 or 10 p.m. that night, Officer Graham met Tardona at the police station. When asked what he was doing when he met with Tardona, Officer Graham answered, "[w]e were getting people together in order to complete our operation." He explained that the operation was "[t]he delivery of cannabis that was coming from Iowa," and to have Tardona deliver the cannabis. Officer Graham did not contact the State's Attorney's office prior to having Tardona complete the deliveries nor did he attempt to secure any kind of warrant. The meeting was completed "within an hour," at which point in time Officer Graham and 10 other officers went to 1153 West Webster Avenue, Apartment 4W, in Chicago, Illinois. The officers were from "TASC force," which Officer Graham explained contained officers from several different agencies. Officer Graham testified they had Tardona deliver the cannabis to the address in question. Officer Graham did not have a search or arrest warrant, and he did not ask for consent from any of the residents of the apartment. When Officer Graham entered the apartment, with about eight other officers, defendant fainted and injured his head.

¶ 8        On cross-examination, Officer Graham testified that Tardona had previously been in

contact with defendant in February of 2011 for the delivery of five pounds of cannabis. Officer Graham learned that Tardona had planned to make a delivery of 15 pounds of cannabis with a price of $30,000 to defendant on March 9, 2011. The cannabis was in a dark-colored suitcase. The plan Officer Graham and several other officers formulated was to have Tardona deliver the cannabis to defendant at 1153 West Webster Avenue, Chicago, Illinois. During the delivery, Officer Graham maintained constant contact with Tardona through text messages. When asked what his instructions were to Tardona, Officer Graham answered, "[u]pon [defendant] taking possession of the cannabis, he was to text message me letting me know that information." Officer Graham described the apartment complex as having a "court way" with a "common door." The building had "bells where you ring individual tenants within the complex." Defendant's name was on one of the bells to ring. Officer Graham learned that defendant would have had to "buzz the door" in order to have a guest enter the lobby area of the apartment building. Upon entering the building, four flights of stairs led to defendant's apartment. He observed Tardona, with the dark-colored suitcase, going into the apartment after being "buzzed in" by defendant. Officer Graham testified that when he was on the landing outside defendant's apartment, he smelled "a strong odor of burnt cannabis" coming from the apartment. There was one other unit on the landing, but Officer Graham did not smell any cannabis-like smells coming from that other unit. As he waited outside defendant's apartment, Officer Graham received several text messages. The first message Officer Graham received stated, "He's fingering it." Officer Graham testified he believed this to mean defendant had purchased the cannabis from Tardona. Officer Graham then sent Tardona a text message telling him to "come on out." Officer Graham described Tardona's reply, which was also by text message, "and he sent me a text message back saying: I have received your next text message, but it was blank. And within that text message he also stated: That in three minutes I'm coming out no matter what." Tardona then came out of defendant's apartment in the next three minutes. Officer Graham saw Tardona open the door to defendant's unit, and the smell of cannabis intensified. When Tardona exited, he left the door to defendant's unit open. Officer Graham and his fellow officers entered the unit and Officer Graham saw the dark-colored suitcase in the hallway. Defendant was leaning over the delivered cannabis when Officer Graham entered the unit. In addition to the 15 pounds of cannabis delivered by Tardona, cannabis was found in every room in the apartment except for the "first bedroom." After entry, Officer Graham received consent from defendant to search the apartment. He found "[d]rug paraphernalia, additional cannabis, additional narcotics, cash money." Officer Graham recovered $30,000 in cash from inside the dark-colored suitcase.

¶ 9       On redirect examination, Officer Graham clarified that Tardona had been arrested in a traffic stop in Iowa where the police learned that Tardona was on his way to Chicago to deliver the cannabis to defendant at defendant's residence. Officer Graham did not know where the prior transaction between Tardona and defendant occurred. The following exchange then occurred between Officer Graham and defendant's attorney:

"MR. BERTUCCI [defendant's counsel]: Now you had the address where Mr. Tardona was going to deliver that cannabis?

OFFICER GRAHAM: Yes.

Q. And you had the amount of cannabis?

A. Yes.

Q. You had the amount of money that was going to be exchanged for that cannabis?

A. Yes.

Q. And that was all information that you could use to get a search warrant, is that correct?

MS. BOOKER [Assistant State's Attorney]: Objection.

THE COURT: Overruled.

OFFICER GRAHAM: Yes.

MR. BERTUCCI: Time, location, amount?

MS. BOOKER: Objection.

THE COURT: Overruled.

OFFICER GRAHAM: Yes.

MR. BERTUCCI: But you didn't get a search warrant in this case?

A. No."

¶ 10    Koch testified that he lived with defendant at 1153 West Webster on March 9, 2011. Koch testified that a "subject" came to the apartment. When the subject left, Koch began watching television. He testified, "I turned on an episode of King of the Hill and before it even started I heard boot steps." The police then entered the apartment and ordered him to "get down to the ground." Koch testified that the police then "threw me to the floor, were pointing guns at me, and said if I moved they would shoot. And then they proceeded to tear apart our apartment." He stated further:

"I heard the door swing open, we have a very loud door. I heard it hit the wall, and then it sounded like boots running inside to me. I was thrown to the ground, even though I was sitting with my hands up. The other girl that was with me, and was also sitting with her hands up, she was also thrown to the ground. We were both handcuffed immediately. We were being yelled at about various things. I was searched probably about ten or fifteen times by different officers. And then, yeah, they continued to search through the place, rummage through all of our belongings, trash certain things."

Koch testified he never gave the police consent to enter the apartment, nor did he hear defendant give the police consent to enter. He did not see a search warrant. He estimated about 10 police officers entered the apartment.

¶ 11    On cross-examination, Koch explained that at the time of the incident he was watching television when Tardona entered the apartment. Koch knew Tardona came to the apartment to deliver cannabis. He saw Tardona's dark-colored suitcase, and Koch knew it contained cannabis. Koch admitted to smoking cannabis that day. Koch admitted that later in the evening, at 11 p.m., he signed a consent form to allow the police to search the apartment. When asked whether the cannabis Tardona delivered was for defendant, Koch answered "Yes."

¶ 12    On redirect examination, when asked whether he remembered the evening of the

incident, he answered "Very clearly." Koch answered "No" when asked whether his smoking of cannabis earlier in the day clouded his perception or judgment.

¶ 13 The State rested without presenting any witnesses.

¶ 14 During argument on the motion, defense counsel characterized the entry into defendant's apartment as a forcible entry without either consent or a warrant, and argued that no exigent circumstances existed to justify the entry into defendant's apartment. He argued that the informant, Tardona, was caught in Iowa after a traffic stop with drugs and "[e]leven or twelve hours later *** he was transported to Chicago to engage in this subterfuge to allow the police to get into [defendant's] apartment." Defense counsel argued further, "the police knew the time, the address, both the amount of illegal substances and the amount of money that was to be exchanged." Accordingly, he asserted that the police should have been able to get a search warrant. He claimed there was no indication that the evidence was going to be destroyed. Therefore, defense counsel argued the police's actions violated defendant's fourth amendment rights.

¶ 15 In response, the State argued that the police's entry into defendant's apartment was lawful "based on the basis of consent." The State explained the "basis of the consent being that there was a consummated drug purchase that had occurred." The State pointed out there was an agreed price for the cannabis between Tardona and defendant and a prior exchange in February of 2011. The State asserted that "once the defendant gives a consent to this cooperating individual then the officers are able to go into that apartment and effectuate the arrest."

¶ 16 The circuit court granted defendant's motion to quash evidence and suppress evidence, finding:

" I cannot imagine a situation where the police have more information than they had in this case. They were contacted apparently by someone in Iowa saying that the confidential informant or cooperating individual had been stopped in Iowa, so they knew that the confidential informant was going to deliver drugs. They knew where the confidential informant was going to deliver drugs. They stopped the confidential informant when they came into Illinois. They met with the confidential informant at the police station, they came up with a plan, and they stopped the confidential informant hours before they went to execute the plan. There is absolutely no reason why they couldn't have gotten a warrant. There *** are no exigent circumstances here to justify their entering the apartment without a warrant."

¶ 17 On November 21, 2011, the State filed a motion to reconsider. In its motion, the State argued that the Illinois State Police had only met Tardona that day, so they did not have any reliable factors to submit to a court for an anticipatory search warrant. The State also argued there was uncertainty about whether or not a criminal act would take place; namely, whether defendant would take possession of the cannabis in the dark-colored suitcase. The State also maintained it was not certain that defendant took possession because Tardona only sent Officer Graham a text message informing Officer Graham that he was leaving the apartment.

¶ 18 Defendant, relying on Officer Graham's testimony, argued the State did have reliable information to obtain a search warrant. Namely, it had the defendant's name, address, the

time and place of delivery, and the amount of cannabis and money to be exchanged. Defendant further argued that there is no evidence that the transaction would not have taken place.

¶ 19 At argument on the motion, the State maintained that defendant consented to allowing the confidential informant into his apartment. Under this "basis of consent," the State argued, "Defendant allowed the confidential informant into the apartment, effectuated that delivery, made a plan to effectuate that delivery, at that point, the confidential informant could have arrested the Defendant." However, the confidential informant, Tardona, needed police assistance to arrest defendant. The State additionally argued there were no reliable factors that the State could rely upon to obtain an anticipatory search warrant. The State asserted that there was no certainty the delivery was going to take place. In response to questions from the court, the State admitted that the police had met with Tardona at the police station and planned how they would deliver the cannabis, that they knew the exact amount of cannabis to be delivered and the price, and that the police and Tardona planned for 10 officers to accompany him to defendant's apartment.

¶ 20 Defendant maintained that the police "had everything within their power to go get an anticipatory search warrant." Defendant pointed out that Officer Graham's testimony established that the police did not have consent to enter or a warrant. Therefore, defendant asked that the State's motion be denied.

¶ 21 The circuit court denied the State's motion to reconsider. The circuit court found:

"[T]he police did have information sufficient to obtain a warrant, they knew exactly where the drugs were being delivered to, they knew the amount, they knew the name of the person, they also knew that Mr. Tardona had previous dealings with the Defendant, they had actually seen the drugs that Mr. Tardona was to deliver to the defendant, and since they were taking the drugs in, they knew all the details of the transaction, they had more than enough information to obtain a warrant.

Absolute certainty is not required in order to get a warrant. What they need is a reasonable basis to believe that a crime will occur. They had more than that. I believe they should have gotten a warrant. They did not attempt to get a warrant."

¶ 22 On December 28, 2011, the State filed a certificate of substantial impairment and appealed the circuit court's ruling.

¶ 23 ANALYSIS

¶ 24 Before this court, the State argues the circuit court erred in granting defendant's motion to quash his arrest and suppress evidence. The State does not argue that exigent circumstances existed to justify the warrantless entry into defendant's apartment; rather, it argues that no warrant was needed in this case for two reasons. First, the State alleges the police did not violate the fourth amendment because defendant forfeited his privacy rights when he invited Tardona into his apartment to make a narcotics transaction. The State admits that it did not raise this argument before the circuit court, but urges this court to relax the rules on waiver. Second, the State argues that the entry into defendant's apartment was consensual and was justified by the "consent once removed" doctrine. The State

acknowledges that the doctrine has not been expressly adopted in Illinois or by the United States Supreme Court, but urges this court to do so.

¶ 25     In response, defendant urges this court to reject the application of the "consent once removed" doctrine to cases such as this one where a confidential informant is involved. Defendant argues further that even if the "consent once removed" doctrine is applied, the elements of the doctrine are not satisfied in this case. Specifically, defendant argues that Tardona had exited defendant's residence and had no right to reenter it at the time the police entered. Additionally, defendant maintains that probable cause did not exist prior to the police entering the apartment.

¶ 26     Initially, we hold that the State's first argument, that the police did not violate the fourth amendment because defendant forfeited his privacy rights when he invited Tardona into his apartment to make a narcotics transaction, is waived. "It is well settled that issues not raised in the trial court are deemed waived and may not be raised for the first time on appeal." *Haudrich v. Howmedica, Inc.*, 169 Ill. 2d 525, 536 (1996). Allowing the State to raise this argument for the first time on appeal may prejudice defendant in this case because he would not be able to present evidence in the circuit court to try to discredit the State's new argument. *Id.* (stating "that allowing the defendant to change his theory of defense on appeal *** would likely prejudice the plaintiff, since he may have been able to present evidence to discredit the theory had it been raised in the evidence presentation stage, that is to say, in the trial court"). Our concerns of prejudice to the defendant in this matter are heightened by the fact that it is not even clear that a transaction took place. Officer Graham testified that after Tardona exited defendant's apartment, both the cannabis and $30,000 were found. There is no explanation in the record as to why Tardona left without taking the money defendant presumably gave him for the cannabis. We think this argument would have been best presented in the circuit court, where both sides would have been able to present evidence outlining their respective positions. Therefore, we decline to relax the rules on waiver and address defendant's first argument on the merits.

¶ 27     We employ a two-part standard of review when determining the propriety of the circuit court's ruling on a motion to suppress evidence. *People v. Harris*, 228 Ill. 2d 222, 230 (2008). Accordingly, the circuit court's "findings of historical fact are reviewed for clear error, giving due weight to any inferences drawn from those facts by the fact finder." *Id.* Therefore, we may only reject the factual findings of the circuit court if they are against the manifest weight of the evidence. *Id.* However, we may draw our own conclusions regarding what relief, if any, should be granted based on an assessment of the established facts relative to the issue presented. *Id.* "Accordingly, we review *de novo* the trial court's ultimate ruling as to whether suppression is warranted." *Id.*

¶ 28     The "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures" is protected by the fourth amendment to the United States Constitution. U.S. Const., amend. IV. The fourth amendment applies to the states through the fourteenth amendment. *People v. James*, 163 Ill. 2d 302, 311 (1994) (citing *Stefanelli v. Minard*, 342 U.S. 117, 119 (1951)). A core principle of the fourth amendment is an individual's right to retreat into his or her home without unreasonable government interference. *People v. Absher*, 242 Ill. 2d 77, 83 (2011) (citing *Kyllo v. United States*, 533

U.S. 27, 31 (2001)). The Supreme Court has explained:

"The Fourth Amendment protects the individual's privacy in a variety of settings. In none is the zone of privacy more clearly defined than when bounded by the unambiguous physical dimensions of an individual's home–a zone that finds its roots in clear and specific constitutional terms: 'The right of the people to be secure in their ... houses ... shall not be violated.' *** In terms that apply equally to seizures of property and to seizures of persons, the Fourth Amendment has drawn a firm line at the entrance to the house." *Payton v. New York*, 445 U.S. 573, 589-90 (1980).

¶ 29 Warrantless searches and seizures inside a home are presumed unreasonable. *People v. McNeal*, 175 Ill. 2d 335, 344 (1997). Accordingly, law enforcement officers generally may not enter, much less search, a person's home without a warrant absent exigent circumstances. *Id.* (citing *Payton*, 445 U.S. at 590). Consent, for example, is an exception to the warrant requirement. *Id.* The totality of the circumstances at the time of the entry must be analyzed to determine whether the police acted reasonably. *People v. Wimbley*, 314 Ill. App. 3d 18, 24 (2000). Factors to consider in determining whether the police acted reasonably include: "whether: (1) the crime under investigation was recently committed; (2) there was any deliberate or unjustified delay by the police during which time a warrant could have been obtained; (3) a grave offense was involved, particularly a crime of violence; (4) there was reasonable belief that the suspect was armed; (5) the police officers were acting on a clear showing of probable cause; (6) there was a likelihood that the suspect would escape if he was not swiftly apprehended; (7) there was a strong reason to believe the suspect was in the premises; and (8) the police entry was made peaceably, albeit nonconsensually." *McNeal*, 175 Ill. 2d at 345. Our supreme court has cautioned that this list of factors is not "exhaustive," and the factors "are merely guidelines rather than cardinal maxims to be applied rigidly in each case." *Id.* The State has the burden of proving that exigent circumstances existed to justify a warrantless entry. *Id.*

¶ 30 In this case, the State failed to argue that any exigent circumstances existed to justify the warrantless entry into defendant's apartment. *Id.* ("The State bears the burden of demonstrating exigent need for a warrantless search or arrest."). The police knew cannabis would be at the apartment because they were delivering it. They knew the amount of cannabis and defendant's address. Officer Graham testified that he first knew of the informant at approximately 10 in the morning on the day of the incident. Tardona did not deliver the cannabis, according to Officer Graham's testimony, until at least an hour after he met with defendant at either 9:30 or 10 p.m. that evening. The police had all day to secure an anticipatory search warrant. Accordingly, the State has not satisfied its burden in proving that exigent circumstances existed to justify the police's warrantless entry into defendant's apartment. Under the facts of this case, it was unreasonable for the police to not even attempt to get a warrant when they knew the time, place, quantity, and price of the arranged transaction and had at least 11 hours to secure a warrant.

¶ 31 The State argues that based on the "consent once removed" doctrine, defendant consented to the warrantless entry into his apartment by allowing Tardona into his apartment. Consent is an exception to the requirement that the police need a warrant to enter a residence. *Payton*, 445 U.S. at 590. The United States Court of Appeals for the Seventh Circuit has explained

the doctrine:

> "The doctrine of 'consent once removed' is applicable where the undercover agent or government informant: (1) entered at the express invitation of someone with authority to consent; (2) at that point established the existence of probable cause to effectuate an arrest or search; and (3) immediately summoned help from other officers." *United States v. Akinsanya*, 53 F.3d 852, 856 (7th Cir. 1995).

¶ 32    In *United States v. Jachimko*, 19 F.3d 296 (7th Cir. 1994), the Seventh Circuit explained that the doctrine "originated in *United States v. White*, 660 F.2d 1178 (7th Cir. 1981), a case wherein undercover officers participating in a drug transaction summoned other officers into a home in order to help them arrest the defendants." *Id.* at 298. The *White* court held that the officers outside the home who were summoned by the undercover officer did not make a separate entry due to the fact that the undercover officer remained in the home after the initial consensual entry. *Id.* (citing *White*, 660 F.2d at 1183 n.3). In *United States v. Paul*, 808 F.2d 645 (7th Cir. 1986), the Seventh Circuit extended the doctrine to confidential informants. *Id.* at 648. In *Paul*, a confidential informant arranged to purchase drugs from the defendant at the defendant's house. *Id.* at 646. The police gave the confidential informant an electronic transmitting device, which the informant was to activate when he saw the drugs. *Id.* After the defendant led the informant into his basement, where the informant viewed the drugs, the informant signaled the officers outside. *Id.* at 646-47. The police entered the home, and saw the drugs in the basement. The Seventh Circuit held that defendant consented to the police officers' entry, and explained:

> "[The defendant] invited [the confidential informant] into his house and down to the basement, where the marijuana was in plain view. If [the confidential informant] had been a police undercover agent rather than a confidential informant, he could have arrested [defendant] then and there, and being lawfully in the basement could have seized the drugs because they were in plain view. [Citations.] [The confidential informant] in fact could have made a citizen's arrest. [Citation.] *** The interest that the *Payton* decision protects is the interest in the privacy of the home, and has been fatally compromised when the owner admits a confidential informant and proudly displays contraband to him." *Id.* at 648.

¶ 33    In *United States v. Diaz*, 814 F.2d 454 (7th Cir. 1987), an undercover officer arranged to buy drugs from the defendant at a hotel room. *Id.* at 455-56. After viewing the drugs, and conducting a chemical test on the drugs, the undercover officer informed the defendant that he was going down to the lobby to call someone to deliver money to complete the transaction. *Id.* at 456. After signaling nearby officers, the undercover officer knocked on defendant's hotel room door, stating " 'I forgot my keys and coat.' " *Id.* Once the defendant answered the door, the officers standing by rushed into the room and observed the drugs. *Id.* The Seventh Circuit held that although there were no exigent circumstances justifying the warrantless entry by the police, the defendant consented to the entry by consenting to the undercover officer's entry. *Id.* at 459. The *Diaz* court warned, "We do not intend to suggest by our analysis that one consensual entry means that law enforcement agents may thereafter enter and exit a home at will." *Id.*

¶ 34    Most recently, in *United States v. Akinsanya*, the Seventh Circuit held the doctrine applied to a situation where a defendant consented to a confidential informant's entry, the confidential informant "saw the heroin (thus establishing probable cause)," and then the confidential informant "immediately summoned the agents, who entered the apartment just as [the confidential informant] was leaving." *Akinsanya*, 53 F.3d at 854-56. The *Akinsanya* court noted that the consent given to the confidential informant by the defendant "was not withdrawn simply because [the confidential informant] stepped out of the apartment moments before, or at the same time, the agents entered." *Id.* at 856.[1]

¶ 35    We hold that the doctrine of consent once removed does not apply in this case because the State failed to prove the second and third elements of the doctrine, *i.e.* that the confidential informant Tardona established the existence of probable cause and then immediately summoned for help. Initially, we note that this case is unique in that the police, through their informant Tardona, provided the contraband. The parties only cited one case, *United States v. Ogbuh*, 982 F.2d 1000 (6th Cir. 1993), where a confidential informant or undercover officer brought the contraband into the house as opposed to the confidential informant or undercover officer seeking to purchase the contraband. In *Ogbuh*, The United States Court of Appeals for the Sixth Circuit refused to apply the doctrine of consent once removed. The *Ogbuh* court distinguished the Seventh Circuit's decision in *Paul*, by stating that the defendants did not display the contraband because the confidential informant brought it in. The court further distinguished *Paul* by stating that the confidential informant did not summon the police; rather, the police "entered forcibly of their own volition less than a minute after sending [the confidential informant] into the room." *Id.* at 1005.

¶ 36    In the case at bar, like in *Ogbuh*, defendant was not displaying any contraband because Tardona brought the contraband into defendant's home. The only testimony regarding any probable cause is that Tardona sent Officer Graham a text message stating, "He's fingering it," which Officer Graham testified meant that defendant had possession of the cannabis. Next, Officer Graham sent Tardona a text message telling Tardona to "come on out." Officer Graham testified that once he entered the apartment, he found the dark-colored suitcase filled with $30,000 in cash. Notably absent from the record is any evidence that a transaction occurred. Left unexplained is why Tardona would sell defendant the cannabis, but then leave the $30,000 that defendant presumably gave him. Based on these facts, we cannot say that Tardona, unlike the defendant in *Paul*, could make a citizen's arrest of defendant. Tardona's single text message did not establish probable cause before Officer Graham decided to

---

[1]The State points out that in addition to the Seventh Circuit, the United States Courts of Appeal for the Sixth and Ninth Circuits have adopted the "consent once removed" doctrine. *United States v. Pollard*, 215 F.3d 643, 648-49 (6th Cir. 2000); *United States v. Bramble*, 103 F.3d 1475 (9th Cir. 1996). The State also argues that the Supreme Court of New Jersey (*State v. Henry*, 627 A.2d 125 (N.J. 1993)) has recognized the doctrine in addition to "at least four appellate courts around the country, including those in Pennsylvania, Texas, California, and Ohio." Defendant points out that the United States Court of Appeals for the Tenth Circuit refused to apply the doctrine to confidential informants. *Callahan v. Millard County*, 494 F.3d 891, 896-98 (10th Cir. 2007), *rev'd on other grounds by Pearson v. Callahan*, 555 U.S. 223 (2009).

remove Tardona from the apartment.

¶ 37 Additionally, the State has also not shown that the third element of the "consent once removed" doctrine was satisfied in this case. Officer Graham testified that once he received Tardona's text message stating defendant was "fingering it," Graham told Tardona to leave the apartment. Officer Graham testified that Tardona "sent me a text message saying: I have received your text message, but it was blank. And within that text message he also stated: That in three minutes I'm coming out no matter what." However, the doctrine is applicable only where the confidential informant "immediately summoned help from other officers." *Akinsanya*, 53 F.3d at 856. That did not happen in this case. Rather, Officer Graham directed Tardona to exit the apartment. Tardona replied that he would exit in three minutes. Once he left, the police forcibly entered defendant's apartment. Instead of the confidential informant summoning help from the officers, Officer Graham, who was not inside the apartment, decided to aid Tardona. Accordingly, the State has not shown that Tardona "established the existence of probable cause to effectuate an arrest or search" or that Tardona "immediately summoned help from other officers." *Id.* Therefore, we hold that the State has not shown that the doctrine of consent once removed applies to the factual scenario at issue in this case.

¶ 38 To clarify, we express no opinion on whether or not the doctrine should be adopted by this or any other court. As pointed out by the parties, neither our supreme court nor the United States Supreme Court has expressly adopted the doctrine. We simply hold that the doctrine does not apply in this case based on the specific facts presented. Namely, the State has not shown that Tardona established probable cause to either arrest or search defendant or that Tardona immediately summoned the police after establishing probable cause such that a warrantless entry was appropriate.

¶ 39 As discussed *supra*, the State failed to satisfy its burden of proving that exigent circumstances existed to justify the police's warrantless entry into defendant's apartment. Therefore, the circuit court properly granted defendant's motion to dismiss, quash his arrest, and suppress evidence.

¶ 40                                        CONCLUSION
¶ 41 The judgment of the circuit court is affirmed.

¶ 42 Affirmed.